PALMER PNEUMATIC TIRE CO. v. LOZIER.

(Circuit Court of Appeals, Sixth Circuit. December 5, 1898.)

No. 512.

1. PATENTS—EQUITY SUIT FOR INTERFERENCE—SCOPE OF JURISDICTION.
    In a suit in equity, under Rev. St. § 4918, to obtain an adjudication between interfering patents, the court is not limited to a determination of the question of priority of invention between the interfering patentees. The statute necessarily presupposes a patentable invention as the subject-matter of the litigation, and if it should appear that neither of the patents in suit is valid, for want of such patentable invention, the court is not required to perform the useless task of considering and adjudicating priorities between them, but should dismiss the bill, and deny relief to either party.

2. SAME—TWO PATENTS FOR SAME INVENTION.
    A patentee cannot extract or reserve an essential element of his invention, without which a patent would not have been granted, and make it the subject of a subsequent valid patent. When once the invention has been used as the consideration for a grant, there is nothing on which a second grant can be supported.

3. SAME.
    Where the characteristic and essential element of a patented article is made the subject of a later patent, the last, and not the first, patent is void, though the invention of such element preceded that of the completed article.

4. SAME—FABRICS FOR PNEUMATIC TIRES.
    The first three claims of the Palmer patent, No. 493,220, for a fabric made of elastic and impervious material, such as rubber, having imbedded within the surface threads substantially out of contact with each other (used chiefly in pneumatic tires), held void in a suit for interference under Rev. St. § 4918, on the ground that such fabric constituted an essential element of the invention covered by the prior patent, No. 489,714, granted to the same patentee for a rubber tube for pneumatic and other purposes. The Huss patent, No. 539,224, for the same fabric, also held void, on the ground that such fabric was an essential feature of the invention covered by the prior patent, No. 495,975, to the same patentee, for an improvement in pneumatic tires.
    84 Fed. 659, reversed.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

This was a suit in equity by the Palmer Pneumatic Tire Company against Henry A. Lozier to determine a question of interference between certain patents, both relating to "a new and useful improvement in fabrics." From a decree adjudging defendant's patent to be prior in point of invention and reduction to practice (84 Fed. 659), the plaintiff appeals.

Douglas Dyrenforth, for appellant.

Wm. A. Redding, for appellee.

Before TAFT, Circuit Judge, and SEVERENS and CLARK, District Judges.

SEVERENS, District Judge. This is a suit in equity brought in the court below for the purpose of obtaining an adjudication with respect to the validity of certain patents, alleged to be interfering patents, of which the appellant is the owner of one, viz. patent No. 493,220, issued March 7, 1893, to the appellant, the Palmer Pneumatic Tire Company, as the assignee of John F. Palmer, upon an application filed by him November 17, 1892, the first three claims of which are here involved. The other patent (that owned by the appellee) is No. 539,-224, and was issued to the appellee, as assignee of Rudolph W. Huss, on May 14, 1895, upon an application filed by the latter October 9, 1893. These patents, respectively, cover an invention which relates to a product. This product, which is one in very extensive use in the manufacture of pneumatic tires for bicycles and other wheels, is, in general terms, described as a fabric made of elastic and impervious material, such as rubber, having imbedded within the surface threads substantially out of contact with each other. As will be seen from what has just been stated, the appellant's patent is first in order of time, by a period of about two years and two months, and had actually been issued seven months before the application for the Huss patent was filed; and it is claimed and insisted by the bill that Palmer was in fact the first inventor of the product therein described, and that, therefore, the appellant is entitled to a decree against the Huss patent, as one not lawfully issued. The appellant, on the other hand, contends that Huss was first in making the invention; that his delay in applying for a patent is excused on just reasons; that, therefore, the latter patent is entitled to precedence; and that the offending claims of the Palmer patent should be declared void.

The suit is founded upon section 4918 of the Revised Statutes of the United States, which is as follows:

"Sec. 4918. Whenever there are interfering patents, any person interested in any one of them, or in the working of the invention claimed under either of them, may have relief against the interfering patentee, and all parties interested under him, by suit in equity against the owners of the interfering patent; and the court, on notice to adverse parties, and other due proceedings had according to the course of equity, may adjudge and declare either of the patents void in whole or in part, or inoperative, or invalid in any particular part of the United States, according to the interest of the parties in the patent or the invention patented. But no such judgment or adjudication shall affect the right of any person except the parties to the suit and those deriving title under them subsequent to the rendition of such judgment."

The pleadings raised no issues, in terms, except those which involve the question of priority in making the invention, as between Palmer and Huss, and one tendered by the defendant, as to whether Palmer had not anticipated himself by a former patent. The defendant, in his answer, included a cross prayer (if it may be so termed) that the complainant's patent be held and decreed to be void,—a course evidently adopted upon the authority of cases holding that the defendant may have affirmative relief in this way without filing a cross bill. Some-

what voluminous proofs were taken, and the case was brought to hearing, whereupon it was determined, upon consideration of the evidence, that Huss was the first inventor of the fabric in question. The Palmer patent was for that reason declared to be void, and a decree entered accordingly. 84 Fed. 659. The complainant has brought the case here by appeal, and makes as many as 27 assignments of.error in the conclusions of the court below,—a number quite sufficient for the presentation of the case, upon every possible aspect of which it is susceptible. We therefore take up the consideration of the case without precise' regard to the language of the assignments of error, or the order in which they are presented.

The first question presented by the record is one which touches the scope of the jurisdiction. It is agreed by counsel on both sides that the only question which the court has authority to consider and determine is that of the relative priority of the dates of the invention by Palmer and Huss, respectively, although much of the argument of the counsel relates to wider questions. It is said that section 4918, above quoted, was intended to subserve the single purpose of enaßling parties to obtain an adjudication of priority of invention covered by interfering patents, with the consequent authority to declare the patent of the later inventor void. Consequently, it is urged, the court has no authority to inquire whether the supposed invention which is the subject of the controversy is patentable or not. It appears from the opinion of the learned judge who decided this case in the court below, found in the record, that this construction of the statute was there accepted upon the authority of certain cases cited in the opinion, without any original consideration of the question by him; but we are unable to agree that the court is so rigidly tied down as such a construction of the statute would imply. On the contrary, we think the court is bound to determine whether, upon identifying the subject-matter of the interfering patents, the invention therein stated is patentable. If it is not, and the court should go on and pronounce a decree of nullity against one of the patents, it would do so at the instance of one who has no right to protect, and consequently no standing on which to assail his adversary. The parties would not stand on equal ground in such a litigation, and the power of the court would be perverted to the determination of an unprofitable inquest as to who was the first discoverer of a nullity. The outcome would be that, while one pretender would be dislodged, the other would occupy the field unscathed. We think that if, upon inspection of the patents, or in the course of the investigation it must make in order to determine the nature of the alleged invention, the court should see that the patents are void for lack of patentable subject-matter, it ought not to proceed to an inquiry as to who first discovered the thing which the court finds to be null, and decree thereon, but should dismiss the bill. Manifestly, it is necessary that the court should know what the invention is which supports the patents, not generally, what the patents are about, but what is the particular discovery for which each of the patents was granted; or, as was said in the opinion of the court of appeals for the Second circuit in Ecaubert v. Appleton, 35 U. S. App. 221, 15 C. C. A. 73, and 67 Fed. 917, "it was necessary for the court to know the point

from which each inventor started, and thus to know in what the invention consisted." The circumstance that, as in the present case, the claims of the two patents are in identical language, does not settle the question of the identity of the invention covered by those claims. The construction of the claims may be affected by the specifications, respectively, and they are also subject to modification of construction by the course of proceedings in the patent office. There have been several decisions in the circuit courts involving the subject of jurisdiction in such cases. In Foster v. Lindsay, 3 Dill. 126, Fed. Cas. No. 4,976, the defendant set up, as one of his defenses, that the invention claimed in the patent of the complainant had been anticipated and was in use before either of the interfering patents had been applied for. It was objected that this defense could not be entertained, and that the court could only determine the question of priority in making the invention. But the court (Treat, J.) held that it was competent in such a case to declare either or both patents void, and so put an end to the litigation. A few years later the question of the power of the court in such cases was presented in the circuit court for the Eastern district of New York, before Judge Benedict, in Pentlarge v. Pentlarge, 19 Fed. 817, where a different view was taken, and it was there held that the statute contemplated that only the questions of interference and priority should be open for adjudication. The reasons which induced the dissent from Judge Treat's construction are stated to be these:

"If the defendant in such an action may attack the plaintiff's invention upon any grounds which the statute permits to be set up by answer in an action for infringement, it would then result that the proceeding would fail to secure an adjudication of the question of interference, and so the proceeding be rendered futile for the purpose which the statute intended should be accomplished."

This proposition assumes that the attack upon the plaintiff's invention succeeds, and the apprehension is that for such a reason the question of interference would not be reached, and so that the purpose of the statute would not be accomplished. But if it is once found that the plaintiff has made no invention, what practical purpose is to be accomplished by taking up and determining a question of priority? Can it be supposed that congress intended that the case should nevertheless be carried on for a vain purpose?

Again it is said:

"By this plea the defendant admits the averment of the bill that the plaintiff's patent is for the same invention as that described in the defendant's patent, and also that the plaintiff was the first inventor. Upon these facts, according to the statute, the plaintiff should have a decree declaring the defendant's patent void, and yet, if the plea be allowed, the plaintiff will obtain no adjudication upon this question, while the defendant will obtain a decree declaring the plaintiff's patent void, and leaving his own to stand; and this, too, when the facts stated in his plea, if true, stated in connection with the facts stated in the bill which are admitted, show the defendant's patent to be also void. The defendant, then, by his plea and his admission taken together, shows his own patent void, and upon that showing claims a decree declaring the plaintiff's patent void, and leaving his own unaffected."

The plea referred to by the learned judge not only admitted that the inventions were the same, and that the plaintiff was the first in-

ventor, but it also set up that for certain reasons therein stated the plaintiff's patent was void; and surely, if the facts were as pleaded, that ought to be an end of the matter, and the plaintiff should not "have a decree declaring the defendant's patent void," and should "obtain no adjudication upon the question of his priority." The purpose of the statute would not be disappointed, for there is no purpose to have a vain proceeding. Nor can there be any greater objection to the defendant's obtaining a decree declaring the plaintiff's patent void, and leaving his own "to stand," than there is to a decree, upon such facts, that the defendant's patent is void, and leaving the plaintiff's to stand. There was the further suggestion that the defendant showed his own patent void, and upon that showing claimed a decree declaring the plaintiff's patent void, and leaving his own unaffected. Such a result, it was said, cannot be permitted. But that was not at all the result that would follow from Judge Treat's construction of the statute, for in the case supposed that construction would lead to a decree annulling both patents. In the result, Judge Benedict held that the fact that the invention was not new was immaterial in such an action. To prevent any misunderstanding, we think it proper to say, as will appear in the sequel, that we think a somewhat different decree would have been the logical result of Judge Treat's view of the power conferred by the statute, from that which appears to have been actually rendered by him in Foster v. Lindsay. In Lockwood v. Cleveland, 20 Fed. 164, Judge Nixon expressed a similar opinion to that of Judge Benedict in Pentlarge v. Pentlarge. It is to be observed, however, that in neither of those cases was it necessary to decide the question, as in each of them the court reached its conclusion upon other grounds. But the opinions of the judges in these cases upon this point have been followed in other cases. See Sawyer v. Massey, 25 Fed. 144; American Clay-Bird Co. v. Ligowski Clay-Pigeon Co., 31 Fed. 466; Electric Accumulator Co. v. Brush Electric Co., 44 Fed. 602. In the first and second of these last-mentioned cases the question was not discussed, or the reasons considered, but in the latter case the question is canvassed somewhat. The learned judge quoted Judge Benedict's opinion approvingly, and, applying the statute as construed in that and the other cases above cited to the case in hand, held that the question of duration of either patent involved in the case by reason of the existence of a foreign patent, inasmuch as it would involve a question of the identity of the two, was beyond the power of the court. With the utmost deference, we are compelled to say that, for the reasons above stated, the grounds upon which the opinion in Pentlarge v. Pentlarge proceeded are not so satisfactory to us, and we are unable to adopt the conclusion reached. It appears to us that section 4918 necessarily involves the presence of a patentable invention as the subject-matter of the litigation, and that the court cannot close the door to all inquiry as to whether such subject-matter for controversy exists. The court is, by the terms of the statute, empowered, as the sequel to its inquiry, to determine either of the patents void in whole or in part. Upon the principles of estoppel by judgment, such decree can bind only parties to the suit, and there is an express provision of the statute which limits its operation to those parties. But the decree does undoubtedly bind

conclusively all who are brought in and made parties, and who claim any right or interest in the invention. As to them the decree is final, and it would seem anomalous that the court should pronounce as between such parties a final decree of invalidity upon grounds less narrow than those which upon general principles the court is bound to regard in order to reach a just conclusion. It seems manifest that the decree is intended to be final. If anything less were intended, it is reasonable to suppose that appropriate language would have been employed to express the limitation; but the terms employed are general, and import no qualified effect in the decree which the court is empowered to render. The parties are not left to relitigate their controversy upon other grounds. The inquiry should be as broad as the conclusion. Quite pertinent to such an inquiry would be previous patents to the same inventors for inventions in the line of the art involved, for they will help to illustrate and define the invention or inventions now involved. It appears from the evidence in the record that Palmer and Huss had each of them obtained several patents for other inventions relating to the same general subject; that is to say, to the use in the manufacture of pneumatic tires of rubber fabric, wherein the rubber is reinforced by threads or other material. We say the same general subject, for beyond doubt the subject-matter of these patents had been of peculiar, if not of exclusive, interest to the parties concerned, as well as the public, in its relation to that manufacture.

We will therefore proceed to ascertain what was the scope and character of the invention covered by the respective patents in question. Palmer, upon whose invention the complainant relies, had been for some time interested in the manufacture of tires for bicycles. The evidence tends to show that he first conceived the idea of the fabric which is the subject of the complainant's patent in July, 1892, or possibly a little earlier. We do not undertake to fix the precise date. On the 9th day of August following, he made application for a patent for a pneumatic tire, in which should be employed, for the purpose of reinforcing and strengthening the tread of the tire, the fabric in question. Some of his claims were for the tire, some for the fabric, and some for the method or process of making it. On November 31, 1892, he dropped by disclaimer from this application the fabric, and the method of making it in other forms than when used for making tubes; reciting that in another application, filed November 17, 1892, he had applied for a patent for the fabric and the method of making it. His original application was allowed, and letters patent No. 489,714 were issued to him, January 10, 1893. The patent stated his invention to be of "a new and useful improvement in bicycle and other tubing," and that it related to an improvement in the manufacture of tubing, "and more particularly in the form of pneumatic tires for bicycles." He stated it as an object of his invention "to provide a fabric for use as a reinforcing strip for tubing of this nature," which should produce certain described advantages. Then, after pointing out the defects of former constructions, and referring to his own former patent, No. 476,680, in which was provided a device for remedying these defects somewhat by the employment of diagonally cut strips of canvas, he stated that it was an object to entirely overcome the objections to that fabric by substi-

90 F.—47

tuting substantially the nonextensible fabric, the making of which he describes as follows:

"To make the substantially nonextensible strip, the employment of which is here suggested, I proceed as follows: While calendering the rubber in the usual calendering rolls, threads are fed to the sheet in the direction of its movement through the calendering machine; these threads being close together, but in the main, at least, out of contact with each other, and becoming imbedded in the soft rubber as the sheet is formed. When the sheet is vulcanized these threads become securely embodied therein, and substantially prevent longitudinal stretching of the sheet, although lateral stretching is still possible. This sheet is then cut into strips longitudinally of the threads therein, or, in other words, the strips are so cut that each will have imbedded in it threads extending longitudinally thereof."

In making the tire he directs that the strips be wound spirally around the inner tube in opposite directions.

With the specification are three drawings, the first of which is the new fabric he proposes to use. It is here shown:

*Fig. 1*

Referring to the drawings, he says:

"In the drawings, Fig. 1 is a plan view of a strip of rubber having imbedded therein longitudinal parallel threads in accordance with my invention; Fig. 2 is a perspective view of a section of rubber tube wound spirally, with superimposed strips of rubber carrying longitudinal parallel threads; and Fig. 3 is a perspective view of a mandrel, to which is applied a collapsed soft-rubber endless tubing, preparatory to vulcanization. A represents a tube made of rubber; B a rubber strip having imbedded therein longitudinal parallel fibrous threads; C, preferably of linen or similar material of a character to be substantially nonstretching. In applying two such strips wound in opposite directions spirally upon the tube, A, it is preferred to wind them as illustrated in Fig. 2, and to lap and join the edges by cementation or otherwise, as indicated at D in Fig. 2. It will be observed that lateral or transverse stretching of the envelope of the tube is prevented by the substantially straight direction of the strain upon the fibrous thread, while longitudinal stretching is still permitted."

The peculiarly valuable quality of his new fabric, which is nonextensible in one direction, but extensible in the other, is that, whereas, if the threads of the fibrous material are woven, as in canvas, the friction of one upon another at their points of contact rapidly saws them into fragments when put into any use which constantly varies the strain at different points, as in the tire of a bicycle when in use, the holding of the threads apart by firmly imbedding them separately in the vulcanized rubber shields them from such destruction, and renders the fabric much more durable.

Later on, the patentee inserted the disclaimer before referred to, as follows:

"I do not herein lay specific claim to the fabric, or the method of producing the same, in other forms than such as are necessary for its use in connection

with tubing, as hereinbefore described; but in another pending application (Serial No. 452,339, filed November 17, 1892) I have applied for a patent for the fabric generally, and the method of producing the same."

Claim 1 in this patent, in the original application, is as follows:

"(1) As a new article of manufacture, a rubber tube for pneumatic and similar purposes, having spirally wound thereon, and imbedded and held therein by vulcanization, fibrous threads of a substantially nonstretching character, substantially parallel with, but out of contact with, each other, substantially as described."

Several other claims for rubber or similar tubing follow, all of which require as a constituent the peculiar fabric of parallel threads imbedded in rubber or like substance.

It is manifest from this examination of the patent that the essential feature of the invention was the devising of the new fabric shown in Fig. 1 of the drawings, and making it a constituent part of his "bicycle and other tubing." Indeed, the tubing would not have been patentable at all without it, for it would have been nothing more, by his own confession, than had already been patented. Conceiving, subsequently to the filing of his application, that this peculiar fabric might be useful for other purposes, he attempted to cut it out of his original application, and put that and the method of forming it forward as the subject of a further patent. The specification for this further patent contained substantially the same description as that contained in his original application, and was of a fabric formed by passing a sheet of rubber, on which were laid longitudinally parallel threads out of contact with each other, through calendering rolls, whereby the threads are pressed into the rubber and the latter vulcanized. The process is described, and the product is readily inferable therefrom. Both process and product are shown by the one drawing, which is attached to the specification, and is here shown:

The first three claims, which are the only ones material to be noticed here, are these:

"(1) A fabric made of elastic and impervious material, such as rubber, having imbedded within the surface threads substantially out of contact with each other, as described. (2) A fabric made of elastic and impervious material, having imbedded and vulcanized therein substantially parallel fibrous threads, as described. (3) A fabric made of vulcanized elastic and impervious material, having imbedded and vulcanized therein substantially parallel fibrous and nonextensible threads, as described."

Confessedly, they are for the same fabric as was described and claimed in claim 1, and other claims, as a constituent member of his pneumatic tire, in patent No. 489,714. If this subsequent patent is valid, the public cannot use the invention of patent No. 489,714, which includes the fabric of the later patent, after the term of the former expires, until the term of the patent for the fabric expires.

Certain things transpired in the patent office during the progress of the case upon the last application which should be here noted. Upon the filing thereof all the claims in the application were rejected, upon reference to patents to Mayall, Crane, and Jones, respectively. Upon reconsideration and argument they were again rejected. Thereupon Palmer appealed to the board of examiners in chief. A carefully prepared argument was submitted by his solicitors to the board, in which they sought to avoid the references to the Crane and Jones patents, upon distinctions not now material. Their contention upon the Mayall reference was based upon the ground (and that was the only ground on which they attempted to avoid it) that in the Mayall patent the fabric was made by laying the threads upon a sheet of rubber, longitudinally thereof and parallel with each other, then coating the threads with plastic rubber so that they should be thoroughly saturated and covered, and then, when nearly dry, pressing all these materials compactly together, whereas in the Palmer application the fabric was made by pressing with great force, such as that of calendering rolls, the parallel threads into the substance of the rubber sheet, and by concurrent vulcanization completely imbedding the threads in the substance of the sheet of rubber. This, it was urged, made a clear distinction between the two products, and entitled Palmer to a patent. The board accepted this construction of Palmer's application, and, as its opinion found in the file wrapper shows, upon that ground the ruling of the examiner was reversed, and the patent allowed. Whether the construction put upon the Mayall patent was in all respects correct or not is immaterial to the effect of allowing the Palmer patent upon the footing of these proceedings, and the construction thus imposed.

Turning next to the history of the Huss invention, it is found that, as contended by the appellees and determined by the court below, Huss invented the fabric in question in March or early in April, 1892, and prior to the invention of the fabric by Palmer. The facts upon which this priority is claimed to be established are thus stated by counsel for the appellees:

"The beginning of April, 1892, Huss had a lot of this fabric manufactured in the factory of the Chicago Rubber Works, at Chicago, Ill., in his presence and according to his instructions. It was made at that time by August J. Hermann, who was then a workman employed by the Chicago Rubber Works,

and who worked entirely under the directions of Huss in making this fabric. He used a revolving metal tube, about twenty-five feet in length and three and one-half inches in diameter, as a straight mandrel, around which he wound one layer of linen thread, with the convolutions of the thread close together, without crossing each other. He covered this layer of thread with two coats of rubber solution, so that the rubber solution filled the spaces between the convolutions of the thread, and penetrated the thread in some places, and formed an even surface of the solution over the entire layer of thread, on the outside thereof. He allowed the rubber solution to dry to a sufficient extent, and then entirely covered the layer of thread with a thin sheet of unvulcanized rubber, which he rolled down with an iron roller, using all of his muscular power for that purpose. He then cut the material thus made across the convolutions of the thread, or lengthwise of the metal tube or mandrel, and removed it from the metal tube or mandrel, and thereby produced a large sheet of fabric, consisting of a thin sheet of unvulcanized rubber, having parallel threads imbedded in its surface, and substantially out of contact with each other."

No application was then—nor until a year and four months later— made by Huss for a patent on his fabric as a separate invention. But meantime, on August 8, 1892, he filed his application for a patent on a pneumatic tire, and on October 11, 1892, still another application for a patent on a pneumatic tire. Patents on each of these applications were issued on the same day, April 25, 1893, and were numbered 495.974 and 495,975, respectively. In the first of these applications he stated his invention to be an improvement in pneumatic tires, consisting in the reinforcement of the tread of the tire by arranging transverse threads in that portion of the structure. The object was to make the tire inelastic sidewise of the tread, but elastic longitudinally. Another advantage consisted in the parallelism of the threads, whereby they were saved from the "sawing action and wear" incident to the employment of a woven fabric. He further states that he provides certain details of arrangement constituting matters of further improvements. After explaining the drawings, he says:

"In the construction of tire shown, the fabric is united with the outer rubber tube or cover, B, and the air tube, C, is arranged within the tubular layer of canvas or fabric. But I do not confine myself to such precise arrangement or mode of incorporating the fabric, A, in a pneumatic tire, and I may also apply the same to any known or suitable construction of tire; observing, however, that in so applying the fabric I arrange its portion, a', from which the longitudinal or warp threads are omitted, so as to re-enforce the tread portion of the tire."

Fig. 4, here shown, illustrates this fabric.

Further on, he says:

"And I may also embody and incorporate such re-enforcing fabric or arrangement of threads within or apply the same to a layer of unvulcanized rubber and then vulcanize the same as will be readily understood by those skilled in the art, without further description."

Claim 3 was as follows:

"(3) A pneumatic tire comprising a re-enforcing fabric united with a layer of rubber, and having its longitudinal or warp threads omitted along the tread portion of the tire, substantially as described."

In the application upon which No. 495,975 was issued, Huss states that his invention was of "a certain new and useful improvement in pneumatic tires." After stating his objects, he says:

"In a tire characterized by my invention, its tread or tread portion is reinforced or supplemented by a layer or layers of threads or thread portions arranged transversely with relation to the tread, and applied or incorporated within the tire in any desired or suitable way consistent with or appropriate to the construction of tire employed."

And further:

"My invention also contemplates, as matters of further improvement, certain details of construction and arrangement, and special modes of preparing and incorporating the re-enforcing layers of thread, as hereinafter fully disclosed."

Pertinent to the matter in hand, he further says in his description:

"As illustrative of a simple, convenient, and economical mode of lining the tread portion of a tire layer with a layer of transversely arranged threads or thread portions, I have shown in Fig. 14 a portion of a mandrel, M, upon which the tire sheet or tubular structure can be formed. The thread can be wound directly upon this mandrel so as to form a layer, 31, and the layer, 32, of rubber can be applied upon such thread layer, and be caused, by suitably applied pressure, to unite either with the entire layer of thread, or to unite with the same along the sides and seating portion of the structure, so that, while the thread will be imbedded therein, it will simply lie again against the inner side of the tread portion of the tube or tire sheet. This tubular sheet can be vulcanized, and then split to form a sheath, or otherwise used as will be understood by referring back to the description of preceding figures. As a special matter of improvement, however, the layer of rubber is pressed upon the layer of thread as aforesaid so as to incorporate or imbed the thread within the rubber; and by such arrangement, a sheath, such as illustrated in Fig. 4, can be produced."

Fig. 4, thus referred to, is here shown:

In further description of his invention, he says:

"Where the cross threads are imbedded in the elastic tube sheet or sheath, they are still separable, or free to separate from one another, since they are simply connected together by an elastic connection, which will stretch or yield longitudinally, but which will be held against transverse stretch by the threads which will not stretch. Hence, although the threads may separate from one another at any point during the passage of the tire over an obstruction, they will nevertheless be restored to their proper normal position by the retraction of the elastic connection, as soon as the obstruction has been passed. It will be seen, therefore, that my invention contemplates re-enforcing a tire tread by a layer of parallel threads united by elastic connection, and arranged so that, while allowing the tread to have a longitudinal stretch, they will hold the same against transverse stretch."

Of the claims in the patent on this invention are these:

"(1) A hollow pneumatic tire, re-enforced by a layer or layers of transversely arranged threads or thread portions incorporated within the tire for the purpose set forth." "(16) A pneumatic tire, having its tread re-enforced by cross threads or thread portions united by elastic connection, and separable from one another to the extent of the elastic yield or stretch of such elastic connection longitudinally with relation to the line of tread, substantially as described."

It is thus apparent that, whatever may be said of his patent No. 495,974, Huss described and claimed in the application, on which was allowed patent No. 495,975, in some of the claims thereof, an article of manufacture which necessarily involved the employment of the same fabric as that described in the patent for the fabric itself. Again, it is necessary, to the appellee's contention for priority in favor of that invention, that the fabric of his patent should have been the same as that employed in his former patent or patents, for it is upon the reduction to use in the construction of his tire that he depends for keeping his invention of the fabric alive. There is no evidence whatever of his using it for any other purpose than that of making tires. No question is made but that it is the same fabric, but counsel for the appellee say it is not an essential part of the pneumatic tire of No. 495,975, because the patentee describes two fabrics which may be employed, of which this is one, and the other is a woven fabric. But this is a mistake. Although a woven fabric is described for other portions of the tire, it was not the fabric used in the tread. If it had been, there would have been nothing patentable, for such structure had been long in use, and was of the kind on which his was an improvement. It was of the essence of the invention that the re-enforcing fibers in the tread should be parallel with each other, and should not cross each other as in woven fabrics. It is true that Huss mentions a laying of the threads transversely of the tire without incorporating them in the substance of the rubber or other elastic material. But it is evident that such a construction would not meet the requirements of the above quoted claims in patent No. 495,975. If, therefore, the Huss patent for his fabric as a separate invention can stand, the public would infringe it if, after his tire patent shall expire, they undertake to practice the invention claimed in the tire patent, and which necessarily involves the use of his fabric. In other words, the monopoly of the first patent would be prolonged until the later patent shall expire.

We think there is no escape from the conclusion that both patents now in suit are void, and for a like reason. One cannot lawfully have two patents for one invention. When once the invention has been used as the consideration of a grant, its value for that purpose is spent, and there is nothing in it on which a second grant can be supported. And this rule holds good though the scope of the patents may be different. One cannot extract an essential element of his invention from a former patent, without which the former patent would not have been granted, and make it the subject of a subsequent patent. The case of Miller v. Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310, is a signal illustration of the rule which has been settled by that and former decisions of the supreme court upon that subject. In that case one of the elements of the combination previously patented consisted of a spring adapted to be used in a cultivator for the purpose of aiding in depressing and in lifting the bar of the implement to which the teeth were attached. Subsequently he obtained another patent for the single function of the spring in aiding to lift the bar. The second patent was held void upon the ground that the matter of the invention was included in the matter of the invention for which the former patent was granted. That decision shows that it is not necessary to the rule that the patents should be for co-extensive inventions, or that the subject-matter thereof should be technically the same. The rule rests upon the broad and obvious ground that, if the second patent is for an invention that was necessary to the use of the invention first patented, it cannot be sustained. In the case of Lock Co. v. Mosler, 127 U. S. 354, 8 Sup. Ct. 1148, a patent had been granted, two of the claims of which were for an article produced by a certain described process. Later, the patentee procured a patent for the process as a distinct invention. The second patent was held void. Mr. Justice Blatchford, delivering the opinion of the court, said:

"After a patent is granted for an article described as made by causing it to pass through a certain method of operation to produce it, as, in this case, cutting away the metal in a certain manner, and then bending what is left in a certain manner, the inventor cannot afterwards, on an independent application, secure a patent for the method or process of cutting away the metal, and then bending it so as to produce the identical article covered by the previous patent, which article was described in that patent as produced by the method or process sought to be covered by taking out the second patent."

In Plummer v. Sargent, 120 U. S. 442, 7 Sup. Ct. 640, it was held that an invention of an article of manufacture which could only be made in one way, and the invention of the process by which the article was made, were one and the same, and not distinct inventions.

Undoubtedly, as pointed out in Miller v. Manufacturing Co., supra, if the second patent is for a distinct and separate invention, or, to put the matter in another way, has not been made integral with another invention already patented, so as to be fairly necessary to its use, it should be sustained, if the other requisite conditions exist. Such was the case in Ohio Brass Co. v. Thomson-Houston Electric Co., 54 U. S. App. 1, 26 C. C. A. 107, and 80 Fed. 712, where the second patent, being for an improvement upon the subject of a prior patent to the same patentee, was held valid. Judge Taft, in delivering the opinion

of this court in that case, clearly pointed out the distinction between such a case and that of Miller v. Manufacturing Co., and it was upon that distinction that the decision was founded. There the original invention could be practiced without the use of the improvement. It continued without any improvement therefrom, and had no claim whatever to its advantages. It is evident that the patents involved in the present case fall within the rule of the cases of Lock Co. v. Mosler and Miller v. Manufacturing Co., and not that of Ohio Brass Co. v. Thomson-Houston Electric Co.

It is unimportant that Huss invented his fabric before he applied for his earlier patents above referred to, or even if he invented the fabric before he invented his pneumatic tire, for the only dates material to the question are those of the patents themselves. Suffolk Co. v. Hayden, 3 Wall. 315; Miller v. Manufacturing Co., supra. Nor did the attempt by Palmer to reserve the fabric from his tire patent by disclaimer, for the purpose of taking out a separate patent on that, avail, for it was a necessary and inevitable legal consequence that the first patent should absorb the invention of the fabric. This feature of the case was also present in Miller v. Manufacturing Co., and it was there held that the reservation was ineffective. Specific allegations in the pleadings of the facts we have referred to were not necessary. They were competent and admissible to prove what the inventions covered by the patents were,—a question which was vital to the issue as to whose discovery was first. Whether, therefore, the effect of the narrowing of the Palmer fabric patent to a fabric in which the fiber is imbedded in the substance of the rubber, and vulcanized therein, and so could be distinguished from a fabric in which the threads are held in contact with the rubber substantially by means of a coating of more plastic rubber, subsequently made adherent to the sheet by pressure, such as counsel for the appellant contend the appellee's product is, would distinguish the inventions, if valid, we do not find it necessary to determine. It may well be that if the case were such as that, upon such evidence as the court has before it relevant to the nature of the invention, the court should think there was fair doubt about its patentability, and that upon a wide range of evidence it might be sustained, the court would proceed to decide the question of priority, and settle the rights of the parties so far as they might depend upon that question. But that is not the case here. We are of opinion that the decree should be reversed, and the cause remanded, with direction to dismiss the bill and deny the relief prayed for by the answer, for the reason that the court finds that the respective patents alleged in the bill to be interfering patents are void in respect to the claims in controversy, for lack of invention; and it is so ordered.