## DITTGEN v. RACINE PAPER GOODS CO. et al.

(Circuit Court, E. D. Wisconsin. June 10, 1910.)

1. Patents (§ 114*)—Suits Relating to Interfering Patents—Scope of Inquiry.

Under Rev. St. § 4918 (U. S. Comp. St. 1901, p. 3394), authorizing a suit in equity to determine rights under interfering patents, and which authorizes the court to "adjudge and declare either of the patents void in whole or in part," there is a wide range of investigation in such suits covering fraud, negligence, and inadvertence on the part of the Patent Office, and the court has power to determine the original question of patentability, and may declare both patents invalid.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 166; Dec. Dig. § 114.*]

2. Patents (§ 106*)—Procedure in Patent Office—Legality.

Under rule 126 of the Patent Office, which provides that interference proceedings may be suspended where an issue is made against one applicant on the ground that he is barred by the statute from the right to a patent because of prior use for more than two years, until such issue has been tried, the action of the Patent Office in ignoring such an issue, which when made becomes the primary and paramount issue, or in referring it for an ex parte hearing, and in issuing the patent without any finding thereon, was unauthorized by law.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 106.*]

3. Patents (§ 76*)—Patentability—Prior Use or Sale.

Where the inventor of a cigar pocket for more than two years before applying for a patent therefor made and sold such pockets in the regular course of his business, such articles were in "public use" and "on sale," and defeated his right to a patent under Rev. St. § 4886 (U. S. Comp. St. 1901, p. 3382), although they were not kept by him in stock, but were made up only on orders received; it being the custom of the trade to take such orders by sample.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 92, 98; Dec. Dig. § 76.*]

4. Patents (§ 328*)—Validity—Cigar Pouch.

The Parmenter patent, No. 781,455, and the Dittgen patent, No. 662,226, each for a cigar pocket, and both covering the same invention, are void for prior public use and sale of the patented article by Parmenter for more than two years prior to either application.

5. Patents (§ 76*)—Prior Use—"On Sale"—"Public Use."

A device will be "on sale" and in "public use" if it is offered for sale, whether any specimen of it is actually sold or not.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 92, 98; Dec. Dig. § 76.*

For other definitions, see Words and Phrases, vol. 6, pp. 5825–5837; vol. 8, p. 7774.]

In Equity. Suit by John J. Dittgen against the Racine Paper Goods Company and O. L. Parmenter. Decree annulling patents of both parties.

George B. Parkinson, for complainant.

Winkler, Flanders, Bottum & Fawsett, for defendants.

QUARLES, District Judge. This is a final hearing in equity. The bill was filed pursuant to section 4918, Rev. St. (U. S. Comp. St. 1901,

p. 3394). An interference was declared in the Patent Office, which was bitterly contested. As a result of the opinions of the several tribunals of the Patent Office, a patent was awarded to Parmenter for count 1, and letters patent issued to Dittgen on count 2.

The bill charges fraud, inadvertence, negligence, and mistake on the part of the Patent Office. Its averments were so drastic that exceptions were taken by the defendant. Judge Seaman, however, following the case of Palmer Pneumatic Tire Co. v. Lozier, 90 Fed. 732, 33 C. C. A. 255, and Ecaubert v. Appleton, 67 Fed. 917, 15 C. C. A. 73, overruled the exceptions, and gave free rein to the rigid examination of the methods and processes of the Patent Office.

The first difficulty which we meet at the threshold of this case is the proper construction of section 4918, Rev. St., which reads as follows:

"Whenever there are interfering patents, any person interested in any one of them, or in the working of the invention claimed under either of them, may have relief against the interfering patentee, and all the parties under him, by suit in equity against the owners of the interfering patent; and the court, on notice to adverse parties, and other due proceedings had according to the course of equity, may adjudge and declare either of the patents void in whole or in part, or inoperative, or invalid in any particular part of the United States, according to the interest of the parties in the patent or the invention patented. But no such judgment or adjudication shall affect the right of any person except the parties to the suit and those deriving title under them subsequent to the rendition of such judgment."

The courts are not agreed as to the scope of jurisdiction awarded by the statute. It will be observed that authority is conferred upon the court to declare either of the patents void in whole or in part, etc. In view of this peculiar language, it was held by a number of the lower federal courts that the court had not jurisdiction of the entire patent, but could proceed only so far as to determine which of the two interfering patents was entitled to relief, and that practically the sole question open under this section is that of priority between the interfering patents. It is difficult to see how the word "either" can be read to mean "both." Pentlarge v. Pentlarge (C. C.) 19 Fed. 817; Lockwood v. Cleaveland (C. C.) 20 Fed. 164; American Clay-Bird Co. v. Ligowski Clay Pigeon Co. (C. C.) 31 Fed. 466; Hubel v. Tucker (C. C.) 24 Fed. 701; Nathan v. Craig (C. C.) 49 Fed. 370. In Foster v. Lindsay, 3 Dill. 126, Fed. Cas. No. 4,976, it was held for the first time that the court might, upon proper issues and proof, decree that both patents are void. In Palmer Pneumatic Co. v. Lozier, 90 Fed. 732, 33 C. C. A. 255, the Court of Appeals of the Sixth Circuit held that, under this section, the court had a free hand to deal with the entire patent, and determine the original question of patentability. The Court of Appeals of the Sixth Circuit is high authority, and the case was cited with approval by Judge Seaman in disposing of exceptions to the bill in this case. In Boston Pneumatic Power Co. v. Eureka Patents Co. (C. C.) 139 Fed. 29, Judge Lowell seems to intimate his judicial sympathy with the earlier line of cases. Under this section as now construed, there is a wide range of investigation, covering fraud, negligence, and inadvertence on the part of the Patent Office. It is true, as claimed by the defendant, that the case was submitted

practically upon the same record that was made in the Patent Office. There is pith in the criticism of defendant that the complainant's proofs have not been introduced or arranged so as to present the case set out in the bill, but rather calculated to thresh over again the old questions of priority of invention, etc. The defendant contends that no new evidence has been submitted by the complainant, that the case has been practically heard on the same record as was originally made in the Patent Office, and that, therefore, the case should be ruled by Morgan v. Daniels, 153 U. S. 125, 14 Sup. Ct. 772, 38 L. Ed. 657.

There is one question, however, that stands out in bold relief. Early in the history of this interference, the attention of the examiner of interferences was called to the existence of a statutory bar by reason of the use and sale of the device sought to be patented for more than two years prior to the application. Complainant's counsel tried to secure a suspension of the interference until an issue could be made up and tried. Rummaging among the Delphic Oracles of the place, he tried to get a response as to which of the parties should assume the burden of proof on such an issue. Rule 126 of the Patent Office provides that the interference may be suspended in such case. This is clearly in accord with correct principles. When such a question arises, it becomes at once the primary paramount issue. Until it is disposed of, the minor issues of prior invention, etc., drop into the category of academic or mere moot questions. Nowhere can be found a better expression of this rule than that of the court in Oliver v. Febel, 100 O. G. 2384:

"The absurdity of a declaration of interference with a reservation at the same time of the question of patentability for future adjudication would be, so far at least as this court is concerned, too glaring to be tolerated. Otherwise we would be trying moot causes which it is not the province of any court of justice under our judicial system to try. It is, of course, competent for the Patent Office to regulate its business in its own way, and to determine for itself by its own rules when and in what order it will take up the questions which arise in the performance of its functions. But, as we have said, this court cannot be called upon to determine moot causes, and the present is no more than a moot cause, since upon the face of the record itself the question of patentability has been expressly reserved for further and future consideration."

Here was a statute of Congress that blocked the way to any monopoly. This, contention was persistently pressed upon the attention of the Patent Office. Proofs were offered showing that for a period of five or six years after conception by Parmenter the cigar pouches which are the subject of count 1 were sold and used; that Parmenter during that period himself sold as many as 25,000 pockets like the subject-matter of count 1. The primary examiner rejected count 1, and denied a patent thereon because the invention sought to be covered had been on sale for more than two years prior to the application. But this decision did not check the course of the Patent Office. October 10, 1904, complainant called the attention of the commissioner to the statutory bar, and suggested inter partes public use proceedings. In a letter addressed by complainant's attorney to the honorable commissioner, he says:

"In this case the examiner of interferences in his opinion of December 18, 1902, called the attention of the commissioner (rule 126) to the fact that 'the senior party sold pouches covered by count 1, or offered them for sale for more than two years prior to October 13th, 1898, his recorded date.' Thereafter, upon motion to remand to the primary examiner, the honorable commissioner, upon January 30th, 1903, stated that 'the matter to which attention has been called by the examiner of interferences will be disposed of in regular order.'"

In reply to this letter the honorable acting commissioner says:

"You are advised that the testimony will be considered by the primary examiner in so far as it bears upon the question of sale of the invention for more than two years. But as pointed out in the decision of January 30th, 1903, Parmenter will be permitted to take testimony for the purpose of explaining or rebutting."

Parmenter elected to stand by his record, and asked that the application be remanded to the primary examiner to determine the statutory bar. He thereupon filed a brief as to the law of the case.

After all these proceedings the primary examiner passed the application to allowance without making any finding on the question of public use, treating it as an ex parte matter, apparently ignoring his own formal finding on the subject, and letters patent 781,455 were issued to Parmenter, being for count 1 of the interference. This is certainly a remarkable record whereby the Patent Office appears to have ignored its own rules and precedents, and to have proceeded in disregard of a federal statute. Rule 126 of the Patent Office was ignored and disregarded. There seems to have been an overweening anxiety to relegate to the background the basic question and the only question proper to engage attention until the same be disposed of in accordance with judicial methods of procedure. The persistent search after priority was what the Court of Appeals denominates "an unprofitable inquest." Palmer v. Lozier, supra. Perhaps the most radical inadvertence committed by the Patent Office was when near the close of this "unprofitable inquest" the fundamental issue was referred to the examiner for an ex parte hearing. Why should this basic issue be smothered by an ex parte hearing? Were not the rights of both parties involved, and were not both entitled to be heard?

In Westinghouse v. Hien, 159 Fed. 938, 87 C. C. A. 142, the rules of practice in the Patent Office are considered bearing upon the question whether a decision on the question of priority of invention necessarily forecloses the parties as to all collateral questions; but in the instant case, where the question of statutory bar was raised, rule 126 of the Patent Office was solely applicable, whereby the commissioner may before judgment on the question of priority suspend the interference and remand the case to the primary examiner for his consideration of the matters to which attention has been directed. From the decision of the examiner appeal may be taken as in other cases. This rule clearly contemplates that the new issue so awarded to the primary examiner must be tried as in other cases. Both parties have a right to be heard, and the conclusions of the examiner should be announced and entered of record so that an appeal may be taken specifically from the finding on such special issue. This orderly course of procedure was departed from. An ex parte hearing was ordered, and no finding was

made on the special issue, but was ruled sub silentio by an order for the issuance of the patent. From the time when the primary examiner rejected Parmenter's claims on account of sale and use of the patented article, up to the time that a general order was entered for the issuance of the patents the dealing of the Patent Office with this question might be denominated as a game of "battledoor and shuttlecock," as the Supreme Court observe in an analogous case. Steinmetz v. Allen, 192 U. S. 543, 563, 24 Sup. Ct. 416, 48 L. Ed. 555. And this, although the honorable commissioner gave assurance by letter set forth in the record "that the matter to which attention has been called will be disposed of in regular order." The regular procedure would seem to be outlined in rule 126. This appears to be a bold departure from the law, calculated to work injustice to the parties as well as to the public. A court of equity cannot tolerate such arbitrary and contradictory procedure. The record affords sufficient reason why Parmenter should be estopped from claiming a monopoly as to a subject-matter that he deliberately relinquished to the public. The statutory bar, if established, would seem to cut off both patents.

The complainant, however, insists that, owing to contradictory statements made by Parmenter in his proofs, the court would be justified in relieving the complainant from the effects of the statutory bar. I cannot see how such an elastic standard of judgment could be tolerated. It is a simple question of fact: Were the patented devices kept on sale for more than two years prior to Parmenter's date of application? This must be decided on all the evidence in the case, and both parties must abide the legal consequences of such decision. The question of fact would seem to be disposed of by Parmenter's testimony. He freely admits that from 1894 until 1901 he offered for sale pouches embodying the invention. On page 73 of the defendant's record we find the following:

"Q. Did you after the winter of 1894 make pouches of the construction shown in Parmenter's exhibit pouch? And, if 'yes,' to what extent and for how long a time? A. I did. I think I have made at least 75,000 at different periods when that style of pouch was called for, and I have at all times been prepared to promptly execute orders for the same; with the only exception in the construction in some of the pouches ordered the inner angular folds were farther apart than those of the pockets made by me in 1890, and possibly, in some of the pockets, the cover did not extend beyond both sides of the tubes."

Speaking of the same pouch, he testified:

"It has stood an equal chance on the market. Since the winter of 1894-95 we have given it a fair chance in competition."

It is true these pouches were not made up in advance and carried in stock, for the custom of the trade was to sell all such pouches by sample, as the printing and advertising on the pouch must be done after the order has been received.

Mr. Walker, in his work on Patents ([11th Ed.] page 96), lays down the rule:

"Indeed, a device will be on sale within the meaning of the law, if it is offered for sale, whether any specimen of it is actually sold or not." The same is true as to public use. Egbert v. Lippman, 104 U. S. 333–336, 26 L. Ed. 755

It is apparent, therefore, that the pouch in question was as much "on sale" as any other pocket sold by defendant. The theory of the brief presented by Parmenter was that an article could not be said to be on sale until it was in esse, and the filling an order, and being ready to fill all orders for such pouches, did not bring the case within the provision of section 4886, Rev. St. (U. S. Comp. St. 1901, p. 3382). Authorities were cited which, by reason of the distinguishing features, do not reach the principle of the instant case. It is unnecessary to discuss them in detail. To say that these goods were not on sale would be juggling with words that are plain. National Cash Register v. American Cash Register (C. C. A.) 178 Fed. 80.

I am satisfied from the evidence that the cigar pouches in question were on sale, and that large quantities of the same were actually sold before the date in question; and this conclusion is fatal to both patents in suit.

For these reasons, both patents must be set aside and vacated.

A decree will be prepared in accordance with this opinion.