Helen Russell PIERCE, Executrix of the Last Will and Testament of George Washington Pierce, Deceased, Appellant,

v.

AERONAUTICAL COMMUNICATIONS EQUIPMENT, INC., Appellee.

No. 19422.

United States Court of Appeals
Fifth Circuit.

Sept. 6, 1962.

David Rines, Robert H. Rines, Boston Mass., Walter Humkey, Harold L. Ward, Miami, Fla., for appellant.

Walter H. Free, New York City, for appellee.

Before TUTTLE, Chief Judge, BELL, Circuit Judge, and CARSWELL, District Judge.

TUTTLE, Chief Judge.

We undertake here to present what we consider to be the fairly narrow issue that remains to be decided in this extended and hard-fought litigation. We do this by assuming the correctness of all of the contentions of the appellee except the ultimate conclusion of law which remains for our decision. The issue can be posed as a question: If an inventor obtains a *combination* patent in the area of radio communication, which *combination* consists of a transmitting and receiving system, each of which, that is, both the transmitting part and the receiving part, includes an *element* known as an "oscillator," and the same inventor obtains a separate patent, applied for at the same time but issued some seven years later, on the oscillator itself, is the patent on the oscillator void for double patenting if it be assumed that its inclusion in each the transmitting and receiving parts of the combination patent was the essential element without which the combination patent would not have issued? In posing the question it must be made clear that in the *combination* patent no separate claim was made as such for the oscillator, each of the three claims of the patents being in terms "a transmitting and receiving system having, in combination, means for transmitting signal waves, means for receiving the signal waves, etc."

This Court has previously given consideration to the contentions now advanced by the parties when the case was here on an appeal from the grant by the trial court of a motion for summary judgment for the defendant, which was entered by it upon the "reasoning" of the Court of Appeals for the First Circuit in two earlier cases involving the same patents, Pierce v. Aeronautical

Communications Equipment Co., 5 Cir., 255 F.2d 458. We there held that, notwithstanding the decision of a court of a different circuit for which we have the highest respect, the inventor was entitled to have the validity of his patent passed on in a case against a different alleged infringer as to all factual matters as well as on the legal issues involved by the courts of this circuit. We made reference to that earlier decision for a description of the patent now in suit, and a statement demonstrating its importance, or, at least, the importance of it, or the prior combination patent, in the art of radio communication. However, the following brief statement of facts is essential to an understanding of the question we have posed:

Professor Pierce, the appellant's decedent, was the unquestioned inventor of the Pierce oscillator which is claimed as the invention in the patent No. 2,133,642 here in issue. At the time of inventing the Pierce oscillator, Pierce invented a number of subsidiary electrical systems for which, by application of February 25, 1924, he endeavored to obtain a single patent covering them all. Since this application included not only general claims for the use of a piezoelectric crystal to control the frequency of an oscillating system (the oscillator) but also specific claims for the combination of a radio transmitter and receiver in which two of such crystals could be used, the Patent Office held[1] that more than one invention was described in the application and required a division. In compliance with this direction Pierce filed a number of additional applications and two of the resulting patents are involved in this suit. One of the additional applications matured, however, on January 20, 1931,

into patent No. 1,789,496, and this patent expired in 1948, before the defendant began the infringement acts complained of in this suit.

Patent No. 1,789,496, consisting of three claims, is for a radio transmitting and receiving system in combination, having a means of keeping the oscillations of both the transmitter and receiver at the same constant frequency. Claim 1 specifically mentions the use of a piezoelectric body for controlling the frequency of these oscillations and that would seem to allow the piezoelectric-crystal-controlled oscillators shown in the Cady patent No. 1,472,583 to be used as an element in the combined transmitting and receiving system. Claim 2 specifies the use of an electro-mechanical vibrator having two electric terminals in a single vacuum tube circuit, which circuit oscillates at a frequency widely independent of the other elements in the circuit. It thus apparently specifies the Pierce oscillator. Claim 3 is much broader in that it calls for any kind of prior art electro-mechanical vibrator to control the frequency.

Action on Pierce's other applications, which resulted from the division, was delayed because of requests for a fuller explanation of the properties of piezoelectric crystals and the failure to pay on time the required final fee. On April 20, 1930, the Patent Office issued a patent to John M. Miller covering claims 51, 52, 54, 55, 56 and 61 through 68 of Pierce's now patent No. 2,133,642. Litigation resulted in the holding that Pierce and not Miller was the inventor of the Pierce oscillator represented by the above claims. Miller v. National Broadcasting Company, Inc., 3 Cir., 79 F.2d 657; Miller v. Pierce, 97 F.2d 141, 25 C.C.P.A.

---

1. Much of the argument before this Court and before the other Courts in which this patent has been litigated, goes to the question whether Pierce's division of the several claims originally filed into several different applications, which resulted in several different patents, was actually required by a binding determination of the Patent Office. It is clear beyond dispute, however, that it was the Patent Office

that made plain to Pierce that a patent would not issue covering all the claims which, if divided might be the subject of separate patents. We think the record fully supports the statement made by this Court in the previous opinion to the effect that "it was the Patent Office that required the division that led to the two separate patents."

1195. Thereafter, on October 18, 1938, the Pierce patents No. 2,133,642 and No. 2,133,646 and the other patent still involved in this suit, were issued.

After the expiration in 1948 of the protection provided by patent No. 1,789,-496 various business concerns began to produce electrical vibrator systems, which Pierce believed infringed his later patents, which had not, by that time, expired. He entered nine suits in several different circuits against various defendants. The principal contention as to infringement here relates to the thirteen claims, 51, 52, 54, 55 and 61 through 68 of No. 2,133,642. This is the patent covering the Pierce oscillator.

The parties do not contest the basic right of a patentee, in such circumstances, to have his claims passed on by the courts of the other circuits. In Triplett v. Lowell, 297 U.S. 638, at page 645, 56 S.Ct. 645, at page 649, 80 L.Ed. 949, the Supreme Court said:

"The court whose jurisdiction is invoked by such a suit [i. e., a second suit in a circuit other than the circuit which has already passed on the matter] must *determine for itself* validity and ownership of the claims asserted, notwithstanding a prior adjudication of invalidity of some of them, unless those issues have become res adjudicata, by reason of the fact that both suits are between the same parties or their privies." (Emphasis added)

When the case was here before, we reversed the summary judgment entered by the trial court, because it was apparent that the trial court merely adopted the decisions of the Court of Appeals for the First Circuit in American Communications Co. v. Pierce, 1 Cir., 208 F.2d 763, and Pierce v. Hewlett Packard Co., 1 Cir., 220 F.2d 531, without making its own decision, to which the patentee was entitled. In reversing the case, we stated that the language of the Court of Appeals for the First Circuit in the Hewlett Packard case "suggests that patent No. 1,789,496 was not valid at all in that it was issued for a combination radio transmitting and receiving system with claims both using and not using Pierce oscillators." We then stated that if the '496 patent was not valid, then the defense of double patenting as to the '642 patent would be unavailing. However, the patentee's executrix, the appellant here, has now expressly waived any contention that the '496 patent was invalid. She, therefore, undertakes to meet the double patenting defense head-on.

As to the double patenting defense as applied in the First Circuit, we had the following to say:

"Even if the First Circuit cases have analyzed the situation correctly, they do not proceed to the point of considering the position of a patentee who has a patent on a combination invention which includes in it a patentable element. The plaintiff in this case may be able to prove that the Pierce oscillator itself is not sufficiently described in claim 2 of patent No. 1,789,496 to provide Pierce with sufficient protection. If someone had used the Pierce oscillator in a system other than the radio system described in No. 1,789,496, the plaintiff would have had difficulties, perhaps insurmountable, in proving that he was afforded protection under No. 1,789,496. A *patent on a combination is a patent on the functioning whole, not on the separate parts* and the fact that an unpatented element of a combination may distinguish the invention does not draw to it the privileges of a patent. Mercoid Corporation v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; Mercoid Corporation v. Minneapolis-Honeywell Regulator Co., 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396; Rowell v. Lindsay, 113 U.S. 97, 5 S. Ct. 507, 28 L.Ed. 906. (Emphasis Added)

"The reasoning of the above First Circuit opinions is, moreover, op-

posed to the basis of the division order and places the inventor in a perplexing dilemma. He must divide his claims into separate applications for separate patents to comply with the Patent Office's requirements, but when he does this he faces the prospect of losing part of his protection, if, as in this case, the patents are issued at different times, and the double patenting argument is used against him. If, as appears to be undisputed, the plaintiff did make a significant contribution with the Pierce oscillator, he is entitled to a patent on it alone to prevent its use without his consent in any combination and for the full 17 years. If the oscillator is not specifically claimed as such in patent No. 1,789,-496 that patent should stand or fall as a combination patent and have no bearing on the oscillator patent No. 2,133,642; otherwise by obeying the Patent Office's order the plaintiff is denied a portion of the protection to which he is entitled.

"Since it was the Patent Office which required the division that led to the two separate patents, plaintiff does not come under the rule of Palmer Pneumatic Tire Co. v. Lozier, 6 Cir., 90 F. 732, prohibiting one from extracting an essential element of his invention from a former patent without which that patent would not have been granted and taking it for the subject of a new patent. Plaintiff originally had presented all of his claims in 1924 and because of the separation ruling and the litigation with Miller he was not awarded a final patent on the oscillator itself until 1938. He is not then in the position of one who tries to extend his coverage by taking the element from the combination for a later and separate patent. Plaintiff should now be allowed to prove that the oscillator is not specifically claimed in patent No. 1,789,496, and that at most it was only protected by that patent to the extent it was used in the combination described therein."

Upon remand the trial court seems to have been so preoccupied with the decisions of the Court of Appeals for the First Circuit, supra, and a subsequent one in the Third Circuit, Pierce, Executrix, v. Allen B. DuMont Laboratories, Inc., 178 F.Supp. 84 (Dist. of Delaware), subsequently affirmed at 297 F.2d 323, that it paid little attention to the legal principles to be gleaned from our prior opinion. Thus it is that, without doing what we expressly stated the case was remanded for—to allow the plaintiff to "prove that the oscillator is not specifically claimed in patent No. 1,789,496," the Court posed an erroneous legal question. It said, "The question simply posed requires a determination as to whether patent No. 2,133,642 contains the same element as patent No. 1,789,496, and if this question is answered in the affirmative, the legal thesis of double patent would apply which would make patent 1,789,496 a predicate for the double patenting of No. 2,133,642." Even this question, it seems to us, does not accurately state what the trial court then proceeded to consider, because obviously the combination patent, 1,789,496, contained many elements in the transmitting and receiving system that were not "contained" in patent 2,133,642, which was purely and simply a patent on the oscillator. Perhaps the Court meant to state the question to be whether "Patent No. 2,133,642 comprises *any of the same elements* as patent No. 1,789,496, and if this question is answered in the affirmative, the legal thesis of double patenting would apply, etc." If this is the question the Court undertook to answer, then it clearly conflicts with the law as laid down by our prior opinion, for we stated, "a patent on a combination is a patent on the functioning whole, not on the separate parts and the fact that an unpatented element of a combination may distinguish the invention does not draw to it the privileges of a patent." Yet the trial court held that since the Pierce os-

cillator "distinguished the invention," to use our earlier language, or was the "essential element" of the combination patent, to use the language of the trial court, the patent on the oscillator must fail on the basis of double patenting.

Moreover it is clear that the trial court completely ignored that part of our earlier opinion quoted above dealing with the case of Palmer Pneumatic Tire Co. v. Lozier, 6 Cir., 90 F. 732, where we said that the plaintiff here "does *not* come under the rule of Palmer Pneumatic Tire Co. v. Lozier, 6 Cir., 90 F. 732, prohibiting one from extracting an essential element of his invention from a former patent, without which that patent would not have been granted, and taking it for the subject of a new patent." Ignoring this prior holding, the trial court said, "Pierce cannot extract this essential element and make it the basis of a subsequent patent, since the Pierce oscillator, the subject of patent No. 2,133,642, rather than the production of a constant beat, is the essential distinguishing feature of combination patent 1,789,496."

The Supreme Court has written fairly recently on the plain distinction between a combination patent and its elements. The latest word on this subject comes from Aro Manufacturing Co. v. Convertible Top Company, 365 U.S. 336, on page 344, 81 S.Ct. 599, on page 604, 5 L.Ed.2d 592, where the Court says:

"For if anything is settled in the patent law, it is that the combination patent covers only the totality of the elements in the claim and that no element, separately viewed, is within the grant," citing Mercoid Corp. v. Mid-Continent Co., supra.

The Court then proceeds to say:

"The basic fallacy in respondent's position is that it requires the ascribing to one element of the patented combination, the status of patented invention itself. Yet this Court has made it clear in the two Mercoid cases that there is no legally recognizable or protected 'essential' element, 'gist,' or 'heart' of the invention in a combination patent."

Referring to the Mercoid case, we find the following language:

"* * * We now add that it makes no difference that the unpatented device is part of the patented whole.

"That result may not be obviated in the present case by calling the combustion stoker switch the 'heart of the invention' or 'the advance in the art.' The patent is for a combination only since none of the separate elements of the combination is claimed as the invention, none of them when dealt with separately is protected by the patent monopoly."

So here, since the Pierce oscillator is not claimed as the invention, it is not "protected by the patent monopoly" in the combination patent. This being true, the patent subsequently issued on the oscillator cannot be held to be void for double patenting because it has never been patented before.

It is not contended by the appellee, here the alleged infringer, that the delay in the issuing of the '642 patent was accomplished in any manner that in and of itself subjected it to an attack on its validity. We have pointed out that it is also not seriously disputed that the division of the original patent into the several that subsequently gave rise to the charge of double patenting was upon the suggestion, if not the direction, of the Patent Office. To the extent then that the decisions of the other courts which have passed on this question are based on the idea that the patentee in some manner improperly or inequitably extended the period of his monopoly on the Pierce oscillator by causing it to be issued seven years later than the combination patent which embodied it as one of its elements, we find no authority for thus limiting the rights of a patentee. Either the '642 patent is valid, as clearly

claiming a patentable invention[2] or it was invalid because it was the subject of a prior patent, which, of course, would be patent '496. Since, however, as we have pointed out, the Supreme Court has repeatedly held that no separate *element* of a combination patent is given any monopoly under the patent laws, but only the *combination as a whole* is protected, there can be no double patenting where the patent issued subsequently constitutes one of the elements of the combination patent.

What we have heretofore said with respect to the thirteen claims to the '642 patent applies even more strongly with respect to the other of the two subsequent patents still at issue here, No. 2,133,646. As to these, the trial court made no effort to analyze the respective claims, or to determine whether claims 5, 9, 16, 22 and 23 of '646 were covered by any of the three claims of 1,789,496. The court simply said, "No useful purpose could be served by setting forth in detail the nature and the basis of the patent which is being discussed since, in my judgment, the validity has been most learnedly and thoroughly considered by other Courts whose conclusions I am impelled to follow. The invalidity of the patent on the thesis of double patenting is therefore adjudicated on the basis of the following authorities: D.C.Mass., 159 F.Supp. 943; 1 Cir., 280 F.2d, 278; and D.C.Del., 178 F.Supp. 84." Ignoring, therefore, the express mandate of this court on the subject matter, the trial judge denied the patentee the right which all parties have consistently agreed he has, that is to an independent consideration of the validity of the patent by the trial court in this circuit, Triplett v. Lowell, supra, and this it did notwithstanding the mandate of this court expressly directing it to consider the question whether the Pierce oscillator was specifically claimed in patent No. 1,789,496.

Having concluded that the trial court erred in holding that the thirteen claims

2. Every court that has passed on any of these patents has recognized that, standing alone, this '642 patent would be **a**

of 2,133,642, and the five claims of 2,133,646 were void or invalid for double patenting, was error, we now decide that, the said defenses having failed, the said claims of the two patents are valid. The case is now remanded to the trial court for the purpose of determining whether the appellee infringed these two patents and for further proceedings not inconsistent with this opinion.

Reversed and remanded.

valid patent because of the very substantial contribution made to the art by the Pierce oscillator.