26 C.C.P.A. (Patents)

## MILLER v. PIERCE.

### Patent Appeal No. 3936.

Court of Customs and Patent Appeals.

June 6, 1938.

Clifton V. Edwards, of New York City, and John B. Brady, of Washington, D. C., for appellant.

Merrell E. Clark, of New York City, David Rines, of Boston, Mass., and Jefferson Ehrlich, of New York City, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

On April 18, 1930, George W. Pierce, Rumford Professor of Physics and Director of the Cruft Laboratory at Harvard University, filed an application, serial No. 695,-094, being a renewal of his application filed February 25, 1924, in the United States Patent Office for a patent for "Electrical Systems." On April 22, 1930, a patent, No. 1,756,000, issued to John M. Miller, a radio engineer connected with the Naval Research Laboratory at Bellevue, D. C., upon an application filed September 10, 1925, for "Piezo-electric oscillation generator."

On September 21, 1932, an interference was declared between the application of Pierce and the patent of Miller, consisting of nine counts, being claims of the Miller patent. On January 16, 1933, Miller moved to dissolve the interference on the ground that Pierce did not have the right to make the counts of the issue, and on the same date Pierce moved to amend the interference by adding nine counts, being claims of the Miller patent. The motion to dismiss of Miller and the motion to amend of Pierce were denied by the Examiner of Interferences. The party Pierce appealed to the Board of Appeals from the said decision of the Examiner of Interferences refusing to add the proposed counts, and the board reversed his decision as to six of the counts which were, on March 13, 1934, added to the interference.

The patent to Miller was inadvertently issued by the Patent Office, the application therefor being copending with the application of Pierce. Pierce, being entitled to the filing date of his application of February 25, 1924, which was before the filing date of Miller, is the senior party, and Miller, the junior party, has the burden of proving his case by a preponderance of the evidence.

The invention involved in this interference relates to an electric oscillation generator comprising a piezo-electric crystal to control the frequency of oscillations generated with the aid of a vacuum tube. Prior to the entry of either Miller or Pierce into the field, the oscillating audion, i. e., the three-electrode vacuum tube comprising a grid, a filament (cathode), and a

plate, had been used extensively as a generator of electrical oscillations in radio transmitting stations, by feeding back energy from the plate circuit to the grid circuit thus causing the tube to oscillate. The feeding back being accomplished by coupling the plate circuit to the grid circuit, inductively by means of a transformer, or through the capacity which exists between the grid and the plate, the frequency of the electrical oscillations generated was determined by the electrical characteristics of the associated circuits such as the inductance of a coil or the capacity of a condenser. The possibility of variations in the generated frequencies, due to variations in the value of the inductance or capacity, became objectionable due to resulting interference between the various transmitters in use.

It was found that a plate cut from a natural quartz crystal, due to the piezo-electric properties thereof, can be made to vibrate by the application of alternating electric voltages, the frequency of oscillation being substantially independent of the inductance or capacity present in the circuits. The counts of this interference do not cover broadly the piezo-electric oscillator per se but define certain specific improvements therein.

The Examiner of Interferences divided the counts of the interference into four groups as follows:

"(I) Counts 1, 2, 4 to 7 and 9, which define a piezo-electric crystal in circuit with a vacuum tube in the output circuit of which there is provided a tunable resonant circuit.

"(II) Count 10, which differs from the counts of group I in the recital of a grid-filament leakage path and a choke coil included therein.

"(III) Counts 3, 8, 11, 13, 14 and 15, which define a piezo-electric crystal in the grid-filament circuit of the vacuum tube, the output circuit of the latter including the tunable resonant circuit.

"(IV) Count 12, which differs from the counts of group III in the recital of the grid-filament leakage path and the choke coil therein."

Priority of invention as to all the counts was awarded, by the Examiner of Interferences, to Pierce, which decision was affirmed by the Board of Appeals. From the decision of the board Miller appealed to this court. At the oral argument, Miller moved to dismiss the appeal as to counts 10 and 12, which motion is allowed. There remain to be considered only the counts comprised in groups I and III, viz., counts 1, 2, 4 to 7, and 9, and counts 3, 8, 11, 13, 14 and 15, respectively. Count 1 is illustrative of the counts comprising group I, and count 3 is illustrative of the counts comprising group III. They follow:

"1. In an oscillation generator, a vacuum tube, a quartz crystal in circuit with said tube; *and a tunable resonant circuit connected in the output circuit of the tube.*" (Italics ours.)

"3. In an oscillation generator, a vacuum tube, having an input circuit comprising a *quartz crystal connected between a control electrode and cathode of said vacuum tube and a tunable resonant circuit external to said input circuit* of said tube and associated with a circuit between the cathode and an electrode of said tube which electrode is maintained at an average potential different from that of said cathode." (Italics ours.)

Prior to the institution of this interference in the Patent Office, suits were brought by Miller in the United States District Court for the District of Delaware, against certain licensees of the party Pierce for infringement of the claims (among others) of his patent which correspond to the counts on appeal here. One of the defenses raised was the alleged prior invention by Pierce. The court held (Miller v. National Broadcasting Co., 6 F.Supp. 47) that the Miller patent was invalid for the reason that Miller was not the first inventor of the subject matter disclosed and claimed in the patent. The decision of the District Court was affirmed by the Circuit Court of Appeals, Third Circuit, in 79 F.2d 657.

The record in the instant case consists largely of the evidence presented in the aforementioned infringement suits, this evidence having been included in this interference record by stipulation. Certain additional testimony was also taken and appears in the record.

The Examiner of Interferences quoted at length from the findings of the District Court in the infringement suits and stated:

"From an independent consideration of the testimony and exhibits offered in behalf of Pierce, the same conclusions have been reached."

The Examiner of Interferences held that certain exhibits (Exhibits 1, 8, 8A and

8B) introduced by Pierce as illustrative of the work done by him prior to and in the summer of 1923 showed that as to the counts in Group I Pierce was entitled to a date prior to any date alleged by the party Miller. The Board of Appeals reached the same conclusion as did the Examiner of Interferences. We quote from its decision as follows:

"The record clearly shows that early in the year 1923, that Pierce became active in the investigation of the use of piezo-electric crystals in controlling the frequency of oscillations generated with the aid of a vacuum tube. A paper prepared in July and in October 1923 was published in the Proceedings of the American Academy of Arts and Sciences, describing the results of this early work. The paper disclosed a crystal controlled oscillator in which the crystal was connected between the grid and the plate and in which an inductance coil was inserted in the plate circuits. In Figs. 3, 5 and 6 the use of an induction coil in the plate circuit was described. It was stated specifically that an inductance of any value, if large enough, may be used in the plate circuit, and a coil of specific size is suggested for use with a crystal of certain specific frequency.

"Whether or not this paper alone [Exhibit 1] constituted a disclosure of the counts included in group I (Point I of appellant's brief) is not a matter which we have to decide. The decision of the Examiner of Interferences is not based alone on this paper for his award of priority to Pierce as to counts of group I, but also on Exhibits 8, 8A and 8B; all these taken together give Pierce a date prior to any date alleged by the party Miller. In other words, the paper referred to constitutes only a fragment of Pierce's case and therefore the question of whether or not it alone constitutes an anticipation of Miller's claims is purely a moot one."

Group III defines the piezo-electric crystal in the grid-filament circuit. As to the counts of this group, the Examiner of Interferences stated:

"Exhibit 13 is an oscillator built by Pierce on November 15, 1923, for lecturing purposes and is substantially the same construction as Exhibit 8. It is Dow's testimony that in the fall of 1923 in using Exhibits 8 and 13 he connected the crystal between the grid and plate of the vacuum tube for shorter wave length oscillations and between the grid and filament for longer wave length oscillations. As pointed out in the court decison, Pierce at a conference on October 20, 1923, disclosed this connection to Cady and Eastham.

"With the crystal connected between grid and filament, Exhibits 8 and 13 embodied the invention defined in the counts of Group III (counts 3, 8, 11 and 13 to 15). With the crystal between the grid and filament and the coil in the plate circuit adjusted for oscillation, and oscillating as stated by the witnesses, the coil was inherently resonant at a higher frequency than that of the crystal and was inductively reactive at the crystal frequency."

As to the counts of this group, the Examiner of Interferences held that Pierce was the first to conceive and was thereafter diligent from the time that Miller claims to have entered the field up to the time of filing the Pierce application. The board affirmed the examiner in this respect.

Much has been said by the parties to this interference, as well as by the tribunals which passed upon the questions involved, about "rough" and "fine" tuning. For instance, Judge Nields had this to say:

" * * * Prof. Pierce provided the means for and utilized 'rough' tuning of that circuit, i. e., a step-by-step tuning. The only difference between his plate circuit so used and the circuit of Fig. 2 of the patent in suit is that the method of tuning employed by Prof. Pierce was 'rough,' whereas the method indicated in the patent in suit is 'fine.' 'Rough' tuning and 'fine' tuning merely express differences in the method of arriving at the desired tuned condition of the plate circuit. This condition is the same whether secured by 'rough' tuning or 'fine' tuning. The difference between these two circuits is, at most, merely one of degree and not in any sense one of substance."

Appellant on this subject says that it is absurd to designate Pierce's tuning as "rough tuning" in contrast with "fine tuning" and argues that the roughness is so great as to eliminate the device as any tuning means whatever.

We are in agreement with the views of the board which are to the effect that the difference between rough tuning and fine tuning is merely one of degree. Unquestionably the record in the instant case which has been so thoroughly examined and reviewed by the Patent Office tribunals and the two federal courts discloses that Pierce

was in possession of the invention of the involved counts long before Miller is shown to have made use of the elements of the counts. We are impressed with the logical findings of Judge Nields as well as the reasoning of the appellate court. In the opinion of the Circuit Court of Appeals it is pointed out that notwithstanding Miller's claim that he made the invention in November, 1923, it was significant that he never applied for a patent until twenty-one months later and then only after he had sought a conference with Pierce, having read or studied the article which Pierce wrote and published in a scientific journal. Judge Nields points out that Miller, instead of being possessed of the invention at the time he visited Pierce, stated in a letter to the latter that he wanted to talk to him for the purpose of obtaining some "pointers" on crystal oscillators. The fact that Miller waited so long to file his application and sought information from Pierce concerning the subject matter here involved is hardly in harmony with the theory that he, Miller, was in possession of the invention at the time he alleges he was.

The burden is a heavy one upon Miller in this appeal. There has been a concurrence not only of the Patent Office tribunals but of the courts, as is hereinbefore stated, in the finding that Miller was not the first inventor, and we do not think it necessary to exhaustively discuss and again review the many facts found in the record.

The board in concluding its decision had this to say:

"Our conclusion is that Pierce was undoubtedly the first to conceive the subject matter of all the counts in issue and that as to part of them he was the first to reduce to practice and as to the others, he was diligent during the period when Miller alleges he entered the field up to the date when he filed his application disclosing the invention of all the counts. * * *"

The decisions of the Examiner of Interferences and the board indicate that it was their view that Pierce had fully conceived and reduced to practice the invention expressed in all the counts prior to Miller's entering the field, but in an abundance of caution both tribunals have found very definitely that Pierce was the first to conceive as to all the counts and that as to those of group III it is certain that he was diligent from the time Miller entered the field until he, Pierce, filed his application.

We are in agreement with the decision appealed from awarding priority of the subject matter of the invention of the counts involved to the senior party Pierce. The appeal is dismissed as to counts 10 and 12 and the decision of the Board of Appeals as to the remaining counts is affirmed.

Affirmed.