**AMERICAN COMMUNICATIONS
CO., Inc.**
v.
**PIERCE.**

**No. 4757.**

United States Court of Appeals,
First Circuit.

Dec. 18, 1953.

Rehearing Denied Jan. 15, 1954.

Paul Kolisch, New York City, Robert L. Thompson and Dike, Thompson & Sanborn, Boston, Mass., on the brief for appellant.

Robert H. Rines, Boston, Mass., David Rines and Rines & Rines, Boston, Mass., on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Massachusetts docketed April 23, 1953, granting plaintiff's motion for partial summary judgment. In his complaint plaintiff alleged infringement of seven patents [1] owned by him, but both parties moved for partial summary judgment under the provisions of Rule 56, F.R.C.P., 28 U.S.C.A. only on claims 51, 52, 54, 55, 56 and 61 to 68 inclusive of the basic patent No. 2,133,-642. The district court heard the matter on affidavits, exhibits and documents submitted by both parties. It held that said claims were valid and infringed and granted the plaintiff's motion and denied the defendant's motion.

The application for the basic patent No. 2,133,642 was filed in the Patent Of-

---

1. No. 2,133,642; No. 2,133,643; No. 2,133,644; No. 2,133,645; No. 2,133,646; No. 2,133,-648 and No. 2,266,070.

fice on February 25, 1924 but because of a subsequent suit[2] brought against two subsidiaries of one of plaintiff's licensees, a Patent Office Interference[3] with one Miller who claimed the same invention as the plaintiff, and divisional rulings by the Patent Office, the basic patent No. 2,133,642 was not issued until October 18, 1938.

Defendant, American Communications Company, Inc., a Massachusetts corporation, first leased in November, 1949 from Federal Telephone & Radio Corporation certain radio transmitting and receiving equipment. The defendant's use of this equipment in the conduct of its business is alleged to infringe patent No. 2,133,642. Federal Telephone & Radio Corporation, named as a defendant, is a Delaware corporation doing business in New Jersey and is the manufacturer and lessor of the accused radio equipment. It has not been served in Massachusetts and has declined to appear voluntarily in this action.

Patent No. 2,133,642, titled "Electrical System", relates to electrical systems in which a vacuum or radio tube circuit is caused to oscillate. The oscillations produced thereby result in alternating currents of electricity which, when the electrical circuit is designed for transmitting purposes, flow in and out of an antenna thereby producing "carrier" waves. It is important that the frequency of the oscillations of the electrical circuit remains substantially constant. This is particularly true when the oscillating circuit is used for radio broadcasting which the district court found to be the primary importance of the patent in suit. A constant transmitting frequency results in the clearer reception of the carrier waves by a receiver "tuned" to that particular transmitting frequency. Also by decreasing the danger of interference from unstable frequency transmitters, a constant transmitting frequency permits the assignment of a greater number of broadcasting stations. The plaintiff in patent No. 2,133,642 claims a method whereby the frequency of oscillating circuits is rendered constant to an extent unobtainable in the prior art. He asserts that when a two-electrode crystal, with the piezo-electrical properties of executing mechanical vibrations under vibratory electrical stimulus and conversely of developing electrical potentials as a result of its mechanical vibrations, was inserted into a non-oscillating single vacuum tube circuit in place of the prior art "tunable" coils and condensers, the piezo-electric crystal both produced and sustained the frequency of the oscillations of the circuit at a substantially constant rate, widely independent of the electrical constants of the system.

The defendant in the lower court relied on the defenses of invalidity, noninfringement, double patenting and laches. In holding for the plaintiff the court found no merit in these defenses. In its oral argument before us the defendant stated its willingness to accept the lower court's statement of facts and contended that in view of such facts there is a clear case of double patenting in this action. In that portion of its opinion dealing with the question of double patenting the district court stated: "The original Pierce patent application Serial No. 695,094 was filed on February 25, 1924. It included not only general claims for the use of a piezo-electric crystal to control the frequency of an oscillating system but also (claims 53, 54 and 57) specific claims for the combination of a radio transmitter and receiver in which such crystals could be used. The Patent Office, holding that more than one invention was described in the application, ordered a division. In compliance with this order Pierce, on January 18, 1928, filed several divisional applications. On

2. Miller v. National Broadcasting Co., D. C.Del.1934, 6 F.Supp. 47, affirmed 3 Cir., 1934, 79 F.2d 657, rehearing denied Oct. 28, 1935.

3. Miller v. Pierce, 1938, 97 F.2d 141, 25 C.C.P.A., Patents, 1195.

one of these, Ser. No. 247,469, patent No. 1,789,496 was issued on January 20, 1931. * * *" This divisional patent covered combined transmitting and receiving systems and expired on January 20, 1948, almost two years before the defendant first leased the accused radio equipment from Federal Telephone & Radio Corporation.

In plaintiff's expired patent No. 1,-789,496 three claims are specified.[4] Neither claim 1 nor claim 3 reveal the plaintiff's distinctive contribution to the art of frequency stabilization. The plaintiff states in his brief that the prior art piezo-electric-crystal-controlled oscillators shown in the Cady patent No. 1,472,583 may be used as an element in the combined transmitting and receiving system specified in claim 1. Claim 3 is even broader, covering any kind of prior art electro-mechanical vibrator. Claim 2, however, sets forth the plaintiff's distinctive contribution to the art of frequency stabilization in combined transmitting and receiving systems. By specifying the use of a two-electrode electro-mechanical vibrator in a single vacuum tube circuit, which circuit oscillates at a frequency widely independent of the other elements in the circuit and only upon the insertion of the vibrator, the plaintiff claimed a significant improvement over the prior art frequency-controlled oscillating circuits.

The defendant asserts, and we do not understand the plaintiff to deny, that claim 2 of expired patent No. 1,789,496 reads upon the accused structures. The circuit diagrams of the defendant's accused receivers shown in the "Instruction Books for Radio Equipments FT–149–30AZ and FT–145–10A", simplified in plaintiff's exhibit XVIII–B, are, for the purposes of frequency stabilization, substantially the same as the receiver circuit diagrams of Figs. 1 and 3 of patent No. 1,789,496. The three-electrode vacuum tube marked V65 in plaintiff's exhibit XVIII–B corresponds to the

4. 1. A transmitting and receiving system having, in combination, means for transmitting signal waves, means for receiving the signal waves, a local oscillating system comprising an amplifying relay having an inherent regenerative coupling, a source of energy, a piezo-electric body, and means connecting the relay, the source and the body together, the connecting means being such that the local system can not oscillate through the inherent regenerative coupling when the body is disconnected from the system, whereby the frequency of the waves of the local oscillating system is maintained substantially constant, and means for combining the received waves with the local waves.

2. A transmitting and receiving system having, in combination, means for transmitting signal waves, means for receiving the signal waves, each of the said means comprising a source of electric energy, a tube having a plurality of electrodes, an electro-mechanical vibrator having two electric terminals respectively connected with two of the electrodes, means substantially nonperiodically connecting the source, the tube, and the vibrator together to maintain the vibrator in vibration and the system in oscillation with a frequency widely independent of the electrical constants of the system and determined by a mode of mechanical vibration of the vibrator, the electrical parameters of the system being such that the system will not oscillate in the absence of the vibrator, the terminals being adapted to act conjointly both for electric stimulation and electric response to effect the oscillation of the system, and means for evidencing beats.

3. A transmitting-and-receiving system having, in combination, a transmitting system for transmitting electric waves, an electromechanical vibrator connected with the system for maintaining the frequency of the transmitting system substantially constant, the connections being such as to prevent the operation of the transmitting system at other than the said substantially constant frequency, a receiving system for receiving the electric waves, the receiving system being traversed by local oscillations, and an electromechanical vibrator connected with the receiving system for maintaining the frequency of the local oscillations substantially constant, the connections of the second-named electromechanical vibrator with the receiving system being such as to prevent the local oscillations at other than the second-named substantially constant frequency.

three-electrode vacuum tubes 124 of Figs. 1 and 3 of patent No. 1,789,496. The piezo-electric crystal Y1 of exhibit XVIII-B corresponds to crystal 2 of Figs. 1 and 3 of patent No. 1,789,496. The condenser C27 in exhibit XVIII-B is merely a conventional output path for the oscillations generated by the circuit and does not affect the operation of the oscillator circuit itself. Condenser C66 and inductance L65 of exhibit XVIII-B represent a parallel tuned resonant circuit in the output circuit of the oscillator and correspond to the inductance coil 40 of Fig. 3 of patent No. 1,789,496. Although there is no condenser shown parallel to the inductance coil 40 of Fig. 3, nevertheless, as is well-known in the art, inherent capacitance is present across the inductance coil 40. The source of electrical energy designated B+ in exhibit XVIII-B produces upon the plate of vacuum tube V65 a positive voltage potential and corresponds to the battery 32 of Figs. 1 and 3. The telephone receiver 42 and the bypass condenser 44 in the plate circuit of Figs. 1 and 3, as the plaintiff states in patent No. 1,789,-496 are optional and may be replaced by an inductance, or by the primary winding of a transformer, or by the input terminals of an amplifier, or may be wholly short-circuited. The condenser C69 in the grid-cathode circuit of exhibit XVIII-B is not, as plaintiff's expert Professor Bowles states, essential to the generation of oscillations in the oscillator circuit. The only significant diagrammatic variation in these circuits seems to be in the position of the piezo-electric crystal in the receiver of Fig. 1 of patent No. 1,789,496. The crystal is there placed in the plate-cathode or output circuit, whereas in the other circuit diagrams the crystal is positioned in the grid-cathode or input circuit. However, plaintiff states in his patent No. 1,789,-496, p. 1, lines 85–94 inclusive:

"The electromechanical vibrator, shown as a piezo-electric body 2, is differently disposed in the different diagrams, so as to illustrate a few of the many different ways in which the vibrator may be employed. It is to be understood, however, that the vibrator disposition, in a particular diagram, is not specific to that diagram, but that the vibrator may be similarly disposed in the other diagrams. * * *"

Also by a similar comparison of the transmitting circuits of radio equipments FT–149–30AZ and FT–145–10A, simplified in plaintiff's exhibits XIX–B and XX–B respectively, with the transmitting circuit of Fig. 1 of patent No. 1,789,496, it will be seen that the circuits are, in all material aspects, substantially identical.

■ Plaintiff contends, however, that claims 51, 52, 54, 55, 56 and 61 to 68 inclusive of the unexpired patent No. 2,-133,642 also read upon the accused structures. He must show, therefore, that, in relation to the accused structures, patent No. 2,133,642 was granted for a distinct and separate invention from that of expired patent No. 1,789,-496, for, as was stated in Miller v. Eagle Manufacturing Co., 1893, 151 U.S. 186, 198, 14 S.Ct. 310, 315, 38 L.Ed. 121:

"The result of the foregoing and other authorities is that no patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ; that the second patent, although containing a broader claim, more generical in its character than the specific claims contained in the prior patent, is also void; but that where the second patent covers matter described in the prior patent, essentially distinct and separable from the invention covered thereby and claims made thereunder, its validity may be sustained.

"In the last class of cases it must distinctly appear that the invention covered by the later patent was a separate invention, distinctly different and independent from that covered by the first patent; in other words, it must be something substantially different from that comprehended in the first patent.

It must consist in something more than a mere distinction of the breadth or scope of the claims of each patent. If the case comes within the first or second of the above classes, the second patent is absolutely void. * * *"

Assuming that claims 51, 52, 54, 55, 56 and 61 to 68 inclusive of patent No. 2,133,642 read upon the accused structures, we do not understand how, with respect to the accused structures, these claims of patent No. 2,133,642 may be said to be a distinct and separate invention from that of claim 2 of expired patent No. 1,789,496.

Plaintiff admits that the transmitter portion of the combined transmitting and receiving system of Fig. 1 of patent No. 1,789,496 is substantially the same as the transmitter illustrated by Fig. 7 of the plaintiff's basic patent No. 2,133,-642 and that the receiver portion of Fig. 1 is the same as the receiver illustrated by Fig. 8 of the plaintiff's patent No. 2,133,642. Plaintiff further admits that the modified transmitting system shown in Fig. 2 of the combination patent No. 1,789,496 is substantially a reproduction of Fig. 9 of the plaintiff's patent No. 2,133,642. To indicate the similarity between claim 2 of patent No. 1,789,496 and the allegedly infringed claims of patent No. 2,133,642 we have compared in the margin [5] the elements of claim 2 of patent No. 1,789,496 with

| 5. Claim 2 of expired patent No. 1,789,496 | Claim 67 of basic patent No. 2,133,-642 |
| --- | --- |
| A transmitting and receiving system having, in combination, means for transmitting signal waves, means for receiving the signal waves, each of said means comprising a source of electric energy, | A generating system |
| | of constant frequency oscillations |
| a tube having a plurality of electrodes, | comprising a vacuum tube, |
| an electro-mechanical vibrator | a piezo-electrical element of hard, durable material |
| having two electric terminals respectively connected with two of the electrodes, | provided with a single pair of operative electrodes in circuit with said tube, |
| means substantially non-periodically connecting the source, the tube, and the vibrator together | and a resonant circuit in the output of said tube carrying oscillating currents |
| to maintain the vibrator in vibration and the system in oscillation with a frequency widely independent of the electrical constants of the system and determined by a mode of mechanical vibration of the vibrator, | having a frequency determined at all times by a natural period of mechanical vibration of said piezo-electric element, |
| the electrical parameters of the system being such that the system will not oscillate in the absence of the vibrator, | said piezo-electric element constituting an essential element in the system for the generation of oscillations. |
| the terminals being adapted to act conjointly both for electric stimulation and electric response to effect the oscillation of the system, and means for evidencing beats. | |

a representative claim such as claim 67 of patent No. 2,133,462. Claim 2 of patent No. 1,789,496 states the use of an electro-mechanical vibrator, but the succeeding elements of the claim reveal that such a vibrator corresponds with the piezo-electrical element specified in claim 67 of patent No. 2,133,642. It seems to us that the only significant difference indicated in the respective claims of the two patents is the use to which the piezo-electrical body may be put. Claim 2 of patent No. 1,789,496 narrows the operation of the piezo-electric crystal to a combined transmitting and receiving system. Claim 67 of patent No. 2,133,642 more broadly states its use in "a generating system." But when the generic "generating system" of claim 67 is read so as to apply to the accused combination transmitting and receiving structures in suit, then patent No. 2,-133,642 claims nothing that is separate and distinct from claim 2 of patent No. 1,789,496.

The plaintiff claimed in patent No. 1,789,496 an improved means for frequency stabilization in combined transmitting and receiving systems. He did not claim to be the first to produce a combined transmitting and receiving system as such. It was the use of the plaintiff's two-electrode piezo-electric crystal in the combination, and not the combination itself, which constituted the "essential distinguishing feature" of patent No. 1,789,496. Application of Coleman, 1951, 189 F.2d 976, 979, 38 C.C.P.A., Patents, 1156. Thus, what we said in Otis Elevator Co. v. Portland Co., 1 Cir., 1903, 127 F. 557, 562, applies with equal force here: " * * * Bassett did not, in his first patent, reserve what he now terms his generic invention. By patenting a specific machine as an embodiment of his generic invention, and not because of any distinct invention involved in specific and patentable features, he patented the subject-matter of the claims of the patent in suit. * * * "

Plaintiff attempts to find a distinction between the two patents with relation to the accused structures in the specification of patent No. 1,789,496 which states: "The superposed frequency may also be used to supply a carrier wave in a radio telephone system where the system operates by suppressed carriers," and from the affidavit of plaintiff's expert, Professor Bowles, who states: "In one system of radio transmission, a much more efficient transmission can be achieved if one of the components of the transmitted wave, known as the 'carrier' can be 'suppressed', that is, not transmitted. This leaves its power to be applied to increase the energy of that part of the signal which is transmitted. The reception of such a signal requires that oscillations of exactly this carrier frequency be supplied independently at the receiver. If the said frequency is not precisely right the signal is garbled. The Pierce patent 1,789,496 solves his problem." Plaintiff argues that this problem could not be solved by merely controlling a transmitter alone or a receiver alone as claimed in patent No. 2,-133,642. But plaintiff in his brief admits this was only one "particular additional problem," and we believe its solution to be an incidental and auxiliary result to the solution of the main problem for which the plaintiff was granted patent No. 1,789,496 namely, improved frequency stabilization of oscillations in a combination transmitting and receiving system by the use of a two-electrode piezo-electric crystal in a single vacuum tube circuit.

Plaintiff further attempts to distinguish the two patents on the grounds that under claim 1 of patent No. 1,789,-496 the prior art piezo-electric crystal of Professor Cady, and under claim 3 any kind of electro-mechanical vibrator, may be used in the combined transmitting and receiving system. Even if such a construction of claims 1 and 3 of patent No. 1,789,496 is a correct one, (which seems doubtful in view of the specifications, particularly pages 3 and 4 of the patent, and the diagrams none of which show anything that resembles a Cady oscillating circuit), nevertheless, the distinctive

contribution of the plaintiff to the art of frequency stabilization in a combined transmitting and receiving system was embodied in claim 2 of patent No. 1,-789,496. Cady's prior art circuits shown in Figs. 1, 3 and 4 of his patent No. 1,472,583, plaintiff admits, stabilized the frequency of the oscillations of the circuit over a very narrow range of variation of the other electrical elements of the circuit and oscillated even upon removal of the piezo-electric crystal from the circuit. The oscillating circuit specified in claim 2 of patent No. 1,789,496, on the other hand, maintained a frequency widely independent of any variation in the other electrical elements of the circuit and only oscillated upon insertion of the piezo-electric crystal. Also Cady's circuit shown in Fig. 2 of his patent No. 1,472,583 required three vacuum tubes to produce and control oscillations and, plaintiff admits, was only an effective stabilizer at low frequencies because of the necessity of a piezo-electric crystal with four electrodes. The oscillating circuit specified in claim 2 of patent No. 1,789,496 required only a single tube and, since only a two-electrode piezo-electric crystal was needed, stabilized both low and high frequencies. Plaintiff himself states that the oscillator circuit of claim 2 of patent No. 1,789,496 is the "preferred" element in a combined transmitting and receiving system. Plaintiff here seems to be attempting to disclaim his distinctive improvements over the prior art which made his application patentable. The use of any kind of electro-mechanical vibrator under claim 3 of patent No. 1,789,496 or of a prior art Cady piezo-electric oscillating circuit under claim 1 in a combined transmitting and receiving system was not the "dominating new result" contributed by the plaintiff to the art of frequency stabilization of such combinations. Saranac Automatic Mach. Co. v. Wirebounds Patents Co., 1931, 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634. The plaintiff in so construing the claims of his patent No. 1,789,496 ignores their patentable features. However, as stated in Palmer Pneumatic Tire Co. v. Lozier, 6 Cir., 1898, 90 F. 732, 744: "* * * One cannot extract an essential element of his invention from a former patent, without which the former patent would not have been granted, and make it the subject of a subsequent patent. * * *" See also Miller v. Eagle Manufacturing Co., supra, and Otis Elevator Co. v. Portland Co., supra.

Plaintiff further argues that the Patent Office Examiner in ordering a division of plaintiff's original application, ruled that the invention of patent No. 2,133,642 and that of patent No. 1,-789,496 to be two separate and distinct inventions, and that such a ruling by the Patent Office Examiner as stated in In re Cady, 1935, 77 F.2d 106, 109, 22 C.C.P.A., Patents, 1190, 1195 "should not be lightly overruled." But it is not necessary for the disposition of the present action for us to decide whether or not the two patents may possibly cover separate inventions. We only hold that the generic patent No. 2,133,642 when read specifically on the accused combined transmitting and receiving systems discloses no invention distinct and separate from that of patent No. 1,789,496.

With respect to combined transmitting and receiving systems utilizing the Pierce oscillator, such as the accused structures, the plaintiff has suffered no hardship because of the delayed issuance of his basic patent No. 2,133,642. The plaintiff by means of patent No. 1,789,-496 has already received the full seventeen years protection granted him by law on such systems. We cannot now extend that monopoly under the mantle of patent No. 2,133,642. Saranac Automatic Mach. Co. v. Wirebounds Patents Co., supra.

The cases relied upon by the plaintiff are distinguishable in that, unlike the case at bar, they involved either the earlier issued divisional patent being an improvement on the later issued patent, Thomson-Houston Electric Co. v. Ohio Brass Co., 6 Cir., 1897, 80 F. 712, or the patents covering separate and distinct inventions, In re Carlton, 1935, 77 F.2d

363, 22 C.C.P.A., Patents, 1223; General Electric Co. v. P. R. Mallory & Co., 2 Cir., 1924, 298 F. 579 or the non-expiration of the patents in controversy, Badische Anilin & Soda Fabrik v. A. Klipstein & Co., C.C.S.D.N.Y.1903, 125 F. 543.

The judgment of the District Court is vacated and the case is remanded to that court for entry of judgment for defendant. Defendant recovers costs on appeal.