**Helen Russell PIERCE, Executrix of the last will and testament of George Washington Pierce, deceased,**

v.

**AMERICAN COMMUNICATIONS COMPANY, Inc.**

**Helen Russell PIERCE, Executrix of the last will and testament of George Washington Pierce, deceased,**

v.

**MACKAY RADIO AND TELEGRAPH COMPANY, Inc.**

Civ. A. Nos. 51–526, 54–261.

United States District Court
D. Massachusetts.

Jan. 31, 1958.

944

See also, 154 F.Supp. 157.

Rines & Rines, David Rines, Robert H. Rines, Boston, Mass., for plaintiff.

Dike, Thompson, Sanborn & Bronstein, Robert L. Thompson, Boston, Mass., Paul Kolisch, J. Pierre Kolisch, New York City, for defendants.

FRANCIS J. W. FORD, District Judge.

Defendants in both of these actions have moved for summary judgment on all the patents in suit. Plaintiff[1] moves in No. 54–261–F for summary judgment on certain claims of patent No. 2,133,642.

Plaintiff's motion is for summary judgment with respect to claims 51, 52, 54, 55, 56 and 61 to 68 inclusive of Pierce patent No. 2,133,642. These same claims were involved in previous motions for summary judgment in No. 51–526–F, D.C., 111 F.Supp. 181, judgment vacated, 1 Cir., 208 F.2d 763, and in Pierce v. Hewlett-Packard Company, D.C., 125 F.Supp. 329, affirmed, 1 Cir., 220 F.2d 531. Ordinarily the principle of *stare decisis* would require this Court, in the light of these decisions of the Court of Appeals of this circuit dealing with these same claims, to hold these claims invalid for double patenting and deny plaintiff's motion in the present case. This would not be true, however, if plaintiff in the present case, involving a different defendant, offers additional evidence on the issue of double patenting which would justify this court in reaching a different result on the present motion. Aghnides v. Holden, 7 Cir., 226 F.2d 949.

In the Hewlett-Packard case the Court of Appeals held that the claims of patent 2,133,642 there involved were void for double patenting on the ground that this patent and patent No. 1,789,496 disclosed only a single invention, the use of a two-electrode piezo-electric crystal in a single vacuum tube circuit to stabilize the frequency of oscillations of the circuit. This invention, admittedly the subject of No. 2,133,642, it held was also an essen-

1. The original plaintiff has died since the commencement of these actions, and his executrix has been substituted as plaintiff.

tial element of No. 1,789,496, without which this patent would not have been granted. 220 F.2d 531, 532–533.

Plaintiff's contention here is that No. 1,789,496 was granted for a different invention. In support of this contention she offers the Patent Office file wrapper on No. 1,789,496, affidavits of counsel, including the Washington counsel who took part in the prosecution of the patent application, and an affidavit of an expert, Professor Edward L. Bowles.

A careful reading of all these documents relating to the history of the application leading up to the issuance of No. 1,789,496 shows that there was throughout a constant emphasis on Pierce's discovery that piezo-electric crystals could be used to stabilize the oscillations of an electrical circuit. Plaintiff argues now that the patent was issued for a combination transmitting and receiving system which was new because it introduced into the prior art combinations a new element which produced a new result or a new function, by making it possible to communicate at extremely high radio frequencies. However, as Pierce himself points out in the specification of the patent, the problem of high frequency communication which Pierce claimed to have solved was essentially one of stabilizing oscillations within a very narrow range and this was done by means of the Pierce piezo-electric oscillator.

Plaintiff further argues that at least Claim 3 of the patent is broad enough to cover the use of electro-mechanical vibrators other than the Pierce oscillator. Assuming that it would be more correct to say that the essential element of No. 1,789,496 is the use of any electro-mechanical vibrator to stabilize oscillations, this would not affect the issue of double patenting. Plaintiff could not later in No. 2,133,642 obtain a patent for this use of one particular form of electro-mechanical vibrator, particularly since he has clearly pointed out that the Pierce piezo-electric oscillator is the best form of electro-mechanical vibrator to use for this purpose and produces the desired stabilization more effectively than any other form.

Professor Bowles in his affidavit points out another element which it is contended is the essential invention contained in No. 1,789,496. This patent shows a combination of radio transmitter and receiver for high-frequency heterodyne reception of communications. In such a receiver the vacuum tube circuit performs two distinct functions, acting both as a generator of local oscillations and as a detector to receive waves from the transmitting station. According to Professor Bowles it was generally thought by those skilled in the art that for best reception the oscillator in such a receiver should be very unstable[2] until Pierce produced the successfully operating combination disclosed in this patent which used the highly stable Pierce oscillator as a part of the receiver circuit. Assuming that this is true, that the Pierce oscillator does possess properties which produce this unexpected result, and that it was first used in this way in the combination described in this patent, the fact remains that nowhere in the documents in evidence relating to the history of this patent is there any indication that such a property of the Pierce oscillator was pointed out or claimed by Pierce, or urged upon the examiner as a ground for allowing the patent. There is nothing here to disturb the conclusion that the use of the Pierce oscillator to stabilize oscillations was the basis for the allow-

2. It is doubtful whether Professor Bowles is correct in this view. He cites Ballantine, Radio Telephony for Amateurs, published in 1922, as an example of an expert who held that instability of oscillations was necessary for successful heterodyne reception. However, as Professor Heinsinger points out in an affidavit submitted by defendants, what Ballantine was talking about was instability of the "oscillating state" (p. 219) i. e. whether or not the system would continue in constant oscillation, and not instability of the frequency at which it would oscillate provided it did continue to oscillate. It was instability of the frequency which the Pierce oscillator overcame.

ance of No. 1,789,496. Later patents for this same subject matter cannot now be freed from the charge of double patenting by a belated discovery that the Pierce combination may also have contained other elements unmentioned at the time which might have afforded additional and independent grounds for allowance of the patent.

The conclusion must be that there is in the additional evidence introduced by plaintiff nothing on the issue of double patenting substantially different from what was before the Court of Appeals on the two previous instances when it passed upon the validity of these same patent claims. In the light of the law as laid down in those decisions, these claims are invalid for double patenting and plaintiff's motion for summary judgment must be denied.

## Defendants' Motions

Judgment has already been entered in the American Communications case for defendant on claims 51, 52, 54, 55, 56 and 61 to 68 of patent No. 2,133,642 in accordance with the Court of Appeals opinion in that case, 208 F.2d 763. In the light of what has been said as to plaintiff's motion in the Mackay case, judgment must also be entered for defendant in that case on these same claims.

Defendant in each case also seeks judgment in its favor on the remaining claims of No. 2,133,642 and also on each of the other patents in suit. The essential question is whether any of the claims of these patents contains anything substantially different from what is contained in the claims of No. 2,133,642 already held invalid, or whether these claims are for essentially the same invention and therefore equally invalid on the ground of double patenting.

It is clear that all of the claims of patent No. 2,133,642 are for the same invention. They vary in defining the Pierce piezo-electric oscillator in broad terms or in closely limited language, or in similarly describing other elements of the system closely or broadly, or in claiming the use of the Pierce oscillator

generally in an electrical system, or in a specific circuit of that system. But what is described in all of them is substantially the same — the use of a piezo-electric crystal in a single vacuum tube system for the purpose of stabilizing the oscillations of the system. Hence what was said by the Court of Appeals as to certain of these claims applies equally to all of them.

Patent No. 2,133,645 is for a receiving system for radio signals in which a piezo-electric crystal is employed to stabilize the oscillations and thus maintain the constant frequency necessary for successful heterodyne reception. This is nothing more than the receiver portion of the transmitter-receiver combination of No. 1,789,496. The use of a piezo-electric crystal to stabilize oscillations is set forth in each of the claims, which vary like those of No. 2,133,642 in being broad general claims for the use of this oscillator, or narrow claims for its use in certain specific combinations with the other already familiar elements of this type of receiving circuit. As in the case of No. 2,133,642 the only invention disclosed by No. 2,133,645 is the same Pierce piezo-electrical oscillator which was already patented in No. 1,789,496.

A similar situation is presented in patent No. 2,133,646. The distinguishing feature of the claims of this patent is the inclusion of the Pierce oscillator as an element in a harmonic selector or harmonic amplifier circuit. Since the piezo-electric crystal of itself produces only oscillations of relatively low frequency, it is necessary to use it in a harmonic selector circuit in order to produce oscillations of high frequency which are harmonics of the frequency produced by the crystal itself. It is clear from the reading of the patent itself that harmonic selector circuits were accepted as old, and what was really claimed in the patent was only the substitution of the Pierce oscillator for the previously known generators as a source of oscillations for such a system. More specifically, the advantage pointed out from the use of the Pierce oscillator as

the master oscillator of the circuit was its ability to stabilize the frequency of the oscillations it produced and consequently the higher frequencies which would be harmonics-or multiples of this fundamental frequency. This, however, is precisely what was pointed out in No. 1,789,496, where Pierce specifically taught that the stabilizing qualities of his oscillator could be used to produce the stabilized high frequency harmonics essential to successful high frequency communication.

In patent No. 2,133,648 the claims again are basically for the use of the same Pierce oscillator, either alone or connected into a vacuum-tube circuit. Some of these claims are for crystals of specified diameter and thickness, or cut in some specified manner to produce a specific frequency of oscillations. In No. 1,789,496, however, it was already pointed out that each crystal produced constant vibrations at a frequency determined by the physical characteristics of that crystal. Particular claims in No. 2,133,648 for crystals of specified characteristics to produce specific frequencies would constitute double patenting over No. 1,789,496, which had already claimed the use of the crystals in general. Certain claims of No. 2,133,648 also include an impedance inserted into the circuit containing the crystal, whereby variations may be produced in the constant frequency generated by the crystal. Such a use of an impedance in the circuit to vary the frequency of the circuit, even in conjunction with the use of piezo-electric crystals, was known before Pierce. Cady, for example, shows it in his reissue patent Re. 17,245. The new element in the combinations claimed in No. 2,133,648 is not the impedance, but the use of the piezo-electrical crystal to stabilize the frequency of oscillations of

the circuit. Hence the essential element of this patent, too, is the same invention disclosed in No. 1,789,496.

■ Patent No. 2,133,643 seems to stand on a somewhat different footing. Several of the claims are for a holder for a piezo-electric crystal rather than for the crystal itself. Others deal with means for electrically connecting the crystal, providing means for easily substituting one crystal for another, or for slightly varying the frequency of oscillations by adjusting the space between the crystal and the electrical conductors. Of course, if these are merely old elements which are brought into combination with the Pierce oscillator, this patent also would be void for double patenting. However, from the face of the patent and the affidavits now before the court, it cannot be said whether or not any of these claims contains any new element, in addition to the oscillator already patented in No. 1,789,496, which would support the validity of the claim. On the present state of the case, the motion for summary judgment as to this patent will be denied without prejudice.

Defendants have also argued for summary judgment in their favor on patent No. 2,226,070 on the grounds of non-infringement. Plaintiff appears to have understood from conference prior to this hearing that this hearing was to be confined to the issue of double patenting, and has not argued the infringement issue. Consequently no decision will be made at this time on the motion so far as it affects patent No. 2,226,070.

Plaintiff's motion for summary judgment in No. 54–261–F is denied. Defendants' motions for summary judgment are allowed as to patents No. 2,133,642, No. 2,133,645, No. 2,133,646 and No. 2,133,648, and denied without prejudice as to patent No. 2,133,643.